# Southern Express Company *v.* Hess.

*Action against Common Carrier for Failure to deliver goods.*

53    19
e134 255

1. *Evidence; objection to admissibility of.*—In an action against an express company for failure to deliver certain jewelry, the consignee was examied on interrogatories, and required in one of them to append the invoice to his answer, and to state the value of the part of the jewelry received and of the part not received. He answered appending the invoice, enumerating the articles not received, and the value of each, and then stated: the values attached to each article are the invoice prices, and the total value of the missing articles is $163 25. *Held,* that an objection to this portion of the answer on the ground that the witness was not testifying of his own knowledge of the value of the missing articles, but only as to the invoice value, even if well taken, went only to the weight and not to the competency of the evidence, and was no reason for excluding it.

2. *Express companies; what liabilities subjected to.*—In this State express companies are common carriers in every just sense of the term, and subject to all their common law liabilities.

3. *Connecting carriers; relations and liabilities of.*—When two carriers connect at a point from which the one is accustomed to receive, for the purpose of completing transportation, goods carried by the other and destined to points on its line—the goods in question being thus received—and the only evidence of their relation to each other is, that they do not *pro rate* freight, the one carrier will be held to be the agent of the other carrier, and of the consignor and consignee, for the transportation of the goods to their destination.

4. *Same.*—In such a case, the receipt given for the goods by the carrier at the place of shipment will be evidence against the last carrier, for the purpose of showing the goods delivered, their condition at the time of the delivery, and the terms of the shipment.

5. *Common carrier; partial delivery of goods by.*—Where a common car-

rier makes only a partial delivery of goods, the presumption is that the loss occurred by its default, and if its contract be such that it is liable only for losses occurring on its own, and not on connecting lines, and there is any evidence of the delivery of the goods to it, and that the loss could have oc-curred while in its custody, it must account for the loss.

APPEAL from Circuit Court of Dallas.

Tried before Hon. M. J. SAFFOLD.

This was an action brought by Adolph Hess, the appellee, against the Southern Express Company, for the failure to de-liver certain jewelry received by it for transportation to Selma, Alabama. The testimony showed that the jewelry together with other that was delivered to appellee, was in a pack-age delivered by one A. Hirsch to the Adams Express Com-pany at Louisville, Kentucky, and consigned to appellee at Selma, Alabama. The Adams Express Company gave the consignor a receipt or bill of lading stipulating for the trans-portation of the package along its line to the point nearest the destination, and its delivery there, to complete the trans-portation to a connecting line. This receipt contained several conditions not material to the matters involved in this case, and restricted the carrier's liability as a common carrier to its own line. The Adams Express Company and the Southern Express Company were different corporations, managed and controlled by different officers, the line of the former extend-ing from Louisville, Kentucky, to Humbold, Tennessee, and that of the Southern Express Company from that point to Selma, Alabama. The relation between the two companies, or whether they had any contract about the transportation of freights, is not shown otherwise than above, beyond the statement "that the two companies did not pro-rate freights, and that for public convenience the Southern Express Com-pany received at Humbold from the Adams Express Com-pany all freights destined for points along the line of the for-mer." On receipt of the package at Selma some of the jew-elry shipped was missing. The testimony of one Crawford, who was agent for the defendant at Meridian, Mississippi, shows that when the package reached that point two of the seals had been broken, and he opened the package and re-packed it. Where the damage occurred is not shown. Du-ring the progress of the trial, the plaintiff put in evidence the bill of lading or receipt given for the package by the Adams Express Company at Louisville. The defendant objected to its admissibility on the ground that no such connection be-tween the two companies had been shown as authorized the Adams Express Company to bind defendant. The court overruled the objection, and allowed the bill of lading to go

[*Southern Express Co. v. Hess.*]

to the jury, and the defendant excepted, and exception was also reserved by it to the action of the court below, in allowing a portion of the answer of Hess, to an interrogatory propounded to him on behalf of the plaintiff, to be read in evidence to the jury. The grounds of the objection and the matters upon which it was based are fully set forth in the opinion. The court charged the jury, that if the evidence shows that the goods were the property of the plaintiff and shipped by his agent at Louisville, Kentucky, through the Adams Express Company, which carried them to Humbold from whence defendant received them, both lines are agents of the owner and subject to the liability of common carriers; and that proof of delivery to the Adams Express Company "by plaintiff's agent at Louisville, and failure of delivery by the Southern Express Company at Selma, cast upon it the burden of exculpating itself from the loss by legal excuse, and that it was not necessary for plaintiff to prove that the defendant received the goods in good order from the Adams Express Company at Humbold.

The defendant reserved an exception to this charge.

The defendant then requested the following charge in writing:

"The plaintiff cannot recover in this action, unless he shows that the goods he alleges were lost by defendant were actually received by it, and it is incumbent upon the plaintiff to fasten, by evidence in this cause, the guilt or default upon the defendant; and the defendant is not liable for the default, neglect or miscarriage of any other carrier, over whose line plaintiff's goods were carried."

The court refused to give this charge and the defendant excepted.

The various rulings to which exception was reserved are now assigned for error.

FELLOWS & JOHNS, for appellant.—The objection to Hess' statement as to the value of the missing goods should have been sustained, and such statements should not have been allowed to go to the jury. He shows by his answer that he does not know their value, and has never seen them, and that beyond what appears in the invoice, he knows nothing of them. The receipt given by the Adams Express Company should have been excluded. There is no evidence of its authority to bind defendant. The charge given is in direct conflict with the law as announced in *Ellsworth* v. *Tart* (26 Ala. 733); and besides the defendant was not liable

for any act or default of the Adams Express Company. Unless there was some fault on part of defendant, it is not liable. *Darling* v. *Boston & Worcester Railroad Company*, 11 Allen 295. If the missing goods were not delivered to defendant, it is certainly not liable. The receipt of the Adams Express Company makes it the agent of plaintiff to deliver the goods to defendant, and *plaintiff's agent* should show the delivery, or at least that the package was delivered in good order. In *Moore's* case there was no doubt the goods were delivered to the defendant, and the question was on what line did the damage to them occur? The court rightly decided that this cast on the last carrier the burden of showing where that damage occurred. Here there is no proof that the missing articles were delivered.

MORGAN, LAPSLEY & NELSON *contra.*—The objections stated to Hess' testimony might affect the weight it should have with the jury, but not its relevancy. The receipt of the Adams Express Company was relevant to the issue joined. It might not be conclusive, but being relevant it could not be excluded. The correctness of the charge given and the incorrectness of the charge refused, are shown by the decision in *Moore* v. *M. & W. P. R. R. Co.*, in manuscript.

BRICKELL, C. J.—1. The appellee, who was plaintiff in the court below, was examined as a witness on interrogatories. The second interrogatory required him, if he had an invoice of the goods shipped, to append it to his answer, and to state the part of the goods received, and the part not received, with their value. He answers, appending the invoice; enumerates the articles not received, and the value of each, and then states—"the values attached to each article are the invoice prices, and the total value of the missing articles is one hundred and sixty-three and 25-100 dollars. An objection was made to this last statement, because the invoice was not produced, and because the witness was not testifying of his own knowledge of the value of the missing articles, but only as to the value assigned them in the invoice. The objection does not seem to us well taken. The invoice is appended and the fair construction of the answer is, that the witness is stating the cost or the price charged the consignee for the articles, which he affirms their value at the place of shipment. An invoice is a list of goods sold, and the prices charged for them, or of goods consigned and the value at which the consignee is to receive them. The value affixed to the missing articles by the invoice is stated by the witness

[Southern Express Co. v. Hess.]

to be their value. The evidence may or may not have been subject to criticism because the witness does not disclose that he ever saw or examined the articles, or how he derived a knowledge of their value. Such considerations do not affect the competency of the evidence, whatever importance a jury might attach to them in determining its weight.

2. It must now be regarded as settled upon principle and authority, that express companies are, in every just sense of that term, common carriers, subjected to all the responsibilities the law attaches to those who pursue the business of common carriers. *Southern Express Co.* v. *Crook*, 44 Ala. 468. In cases of ordinary bailment the general rule is, that the bailee is chargeable not by the delivery of goods, but by reason of negligence. Hence in an action against the bailee, not only the delivery, but negligence must be proved. As to carriers the rule is otherwise. The law casts upon him the *onus probandi*, if he claims exemption from liability. Proof of delivery to him, and his failure to re-deliver upon demand is sufficient to charge him, unless by proof it appears that the failure was occasioned by some of the exceptions which relieve him from liability. *Steele & Burgess* v. *Townsend*, 37 Ala. 254; *M. & W. P. R. R. Co.* v. *Moore*, June term, 1874; Edwards on Bail, 565–70.

3. A package of jewelry consigned to the appellee at Selma, in this State, was delivered for transportation to the Adams Express, at Louisville, Kentucky. That company gave the consignor a receipt or bill of lading, stipulating for the transportation of the package along its line to the point nearest the destination, and its delivery there for further transportation to a connecting line, and restricting its liability as a common carrier to its own line. The evidence as to the true relation existing between the Adams Express and the appellant, is very meagre. It appears only the two companies connected at a point from which the one received goods destined for points on the line of the other. How freight was paid or what arrangement existed between them about freight, its collection and division, does not appear. They did not *pro-rate* freights is the only evidence. What is intended by the expression we are left to conjecture. Whether it was intended that each charged and collected its own freight, or that they did not apportion the freight according to the distance goods were carried by the one or the other, but that each company made its own charges, and received them without any liability for them resting on the company delivering the goods at their destination, cannot be determined. It does appear the course of business between

the two companies was that the one received from the other at the point of connection goods destined for places on its own line of transportation. This fact of itself constituted the one company, the agent of the other, as to such freight, and its consignor and the consignee. When the goods are delivered to the consignee at the place of destination, freight not having been paid, and he pays it to the company, delivering them, no liability would rest upon him to the other company for the freight over its line. The company delivering would have the right to receive such freight, and to retain the goods until it is paid. Regarding each company as the agent for the other, the bill of lading or receipt given by the one is evidence against the other for the purpose of showing the goods delivered, their condition at the time of delivery and the terms of shipment. If the company finally delivering the goods does not deliver them in the condition in which they were received by its agent, then it must account for the injury. The *onus probandi* rests upon it to show that the injury occurred without its fault or neglect. To the extent of involving it in the liability of a common carrier after the goods shall come to its custody, the company receiving the goods had authority. (The liability certainly attaches when the goods are delivered by the connecting company. As we have said in all cases of loss or injury, the *onus probandi* is on the carrier to exempt himself from liability, for the law imposes the obligation of safety upon him. Story on Bailments, § 529. The failure to deliver charges him *prima facie*, he having received the goods. It appears the goods were received by the Adams Express standing to the appellant in the relation of agent, contracting for the appellant for transportation along its line, and delivery at the place of destination. There is but a partial delivery of the goods. Has the appellant delivered all it received from its agent? How did it obtain a part and not the whole? The answer to these inquiries lies peculiarly within the knowledge of the appellant, and until by proof it shows a delivery of all it received, the presumption must attach that the loss occurred by its default. If, as the appellant insists, it is liable only for losses or injuries on its own line, when a loss is shown, and a loss which could have occurred while it had custody of the goods, and there is evidence the goods were delivered to it, it must account for the loss. The loss is a fact resting peculiarly within its knowledge. Here, how easy for the appellant to have shown it delivered the package in the condition in which it was received, and thus on its own theory of the character and extent of its liability have discharged itself? The consignor

[Commissioners' Court *v.* Moore.]

or consignee cannot be expected to accompany the goods over the whole line of transportation, watch over them, and be prepared to prove when a loss occurred and which of the carriers is liable. The one delivering the goods must show he has done his duty, safely delivered in the condition in which he received them, or he must answer for the loss or injury which has occurred. The rulings of the circuit court conform to these views, and its judgment is affirmed.