LEE LIN, Appellant, *v.* TERRE HAUTE AND INDIANAPOLIS RAILROAD, Respondent.

March 22, 1881.

1. Where one railroad company sells to a traveller a through ticket and check for his trunk over its own and connecting roads, and, in pursuance of the contract thus made, the passenger is transported to the destination called for by the ticket and the check, and his trunk is delivered to him by the last carrier, the lock broken and a portion of the contents stolen, these facts entitle the passenger to recover damages from the last carrier.

2. To protect himself, the last carrier must show that he delivered the trunk to the passenger in the same condition in which he received it.

3. Such a contract is a contract with each several carrier who, under it, undertakes the transportation of the passenger and his baggage.

4. Evidence that when the baggage was delivered by the last carrier the package was broken and a part of its contents missing, is *prima facie* evidence that the loss occurred through the negligence or fraud of the last carrier; and casts upon such carrier the burden of proving that the loss happened before the goods reached him.

5. The liability of a carrier of passengers for the passenger's baggage does not cease until a delivery of the same to the passenger.

6. The delivery of the baggage by the defendant at the end of its route to an intermediate carrier for delivery to the passenger, makes the latter carrier the agent of the defendant for the purpose of making the delivery.

7. In an action before a justice such a statement as will apprise the defendant of the nature of the plaintiff's demand with such certainty as to bar another action for the same demand, is sufficient.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

ROBERT CRAWFORD, for the appellant: The responsibility for the delivery of the baggage rested upon every road over which the baggage passed under the contract. — *Thornton Check* v. *Railroad Co.*, 2 Disney, 237 ; *Railroad Co.* v. *Spratt*, 2 Duv. 4 ; *Cobb* v. *Abbott*, 14 Pick. 289 ; *Hart* v. *Railroad Co.*, 8 N. Y. 37 ; *Carter* v. *Peck*, 4 Sneed, 203.; *Wilson* v. *Railroad Co.*, 21 Gratt. 654. Partnership is not necessary to constitute a joint liability. — Hutch. on Car. 127, chap. 4, sect. 715 ; *Wyman* v. *Railroad Co.*, 4 Mo.

App. 35. Where the last carrier on the line is sued for the loss, having made a partial delivery, the presumption is the loss occurred on its own line. — *Southern Express Co.* v. *Hess*, 53 Ala. 19 ; *Drew* v. *Red Line*, 3 Mo. App. 501 ; *Laughlin* v. *Railroad Co.*, 28 Wis. 204 ; *Hooper* v. *Railroad Co.*, 15 H. L. Rep. (N. S.) 158.

EVERETT W. PATTISON, for the respondent, cited : *Watkins* v. *Railroad Co.*, 8 Mo. App. 570.

THOMPSON, J., delivered the opinion of the court.

The amount in controversy in this case is small, and the plaintiff a very humble person, but the principal involved is very important to the public, and, so far as we know, has not been settled in this State. The plaintiff, Lee Lin, a Chinaman, purchased in New York City, of the Pennsylvania Railroad Company, a "through" passenger-ticket to St. Louis, and received from an agent of that company the usual railway baggage-check, by which, in language familiar to all persons, his baggage was checked through from New York to St. Louis. This ticket would seem to have been the ordinary coupon ticket which all railway companies sell, as the evidence shows, to travellers going to points beyond their own line. The last road over which the plaintiff came on this ticket was the defendant's road, known as the "Vandalia Line." There was evidence tending to show that the plaintiff's baggage consisted of a trunk, which, when delivered to the servants of the Pennsylvania Railroad Company at New York, was securely locked, and tied with ropes ; that when it was delivered by the servants of the defendant to the servants of the St. Louis Transfer Company, at the Union Depot in St. Louis, to whom the plaintiff had paid fifty cents to carry it to the house in St. Louis where he was to stop, its lock was broken off, and that sixty silver dollars and two silk handkerchiefs had been taken from it, which were in it when the plaintiff parted with it in New York. The present action is brought for

$62.50, the alleged value of the money, the handkerchiefs, and the lock. Judgment was rendered for the plaintiff before a justice of the peace, the suit was appealed to the Circuit Court, and there the jury were directed to find for the defendant.

The plaintiff files a statement of his cause of action before the justice of the peace, in which he alleges that the Pennsylvania, Pittsburg, Cincinnati, and the defendant company constitute an association of common carriers for the purpose of carrying passengers and their baggage to and from New York City and St. Louis, under the different names of "Vandalia Line," "Vandalia, Panhandle, and Pennsylvania Railroad," and "Vandalia and Panhandle Line." It then sets out substantially the above facts, and alleges "that the said company, including the defendant, did not safely carry and deliver the baggage of the plaintiff at St. Louis," etc., and alleges that the articles described as having been taken from the trunk " were lost by the fraud or gross negligence of the defendant as aforesaid." The testimony shows that the defendant company's railroad was usually known as the "Vandalia Line;" and that the words "Vandalia Line" were written in prominent letters over and around the general offices of the company, and on their passenger and freight contracts, and advertisements; that the defendant's road extends only from East St. Louis to Indianapolis; that the defendant company issued through coupon tickets to New York over its line of railway, in connection with the Pittsburg, Cincinnati, and St. Louis Railway, known as the " Panhandle Road," and the Pennsylvania Railroad; that the coupons which compose these tickets are taken up by the conductors of the said roads respectively; but that the other roads named formed no part of the "Vandalia Line;" that these roads had no special arrangement with each other, but the arrangement by which these through coupon tickets were issued was the same as the defendant road had with all other roads run-

ning east, and that all railroads in the United States issued coupons tickets over every other railroad in the United States in the same way, each coupon being taken up by the conductor of the particular railroad named upon it, such road receiving from the company selling the ticket its proportionate share of the passage-money according to the number of miles which the coupon represents. It also appears that the cars of the "Vandalia Line" run only on the defendant's road between East St. Louis and Indianapolis, at which place passengers going east or west change cars, and their baggage is transferred from the train of one connecting road to that of the other.

The plaintiff's position is that this testimony would authorize a jury to infer that there was a joint undertaking on the part of the three railroad companies named, to carry the plaintiff and his trunk from New York to St. Louis; that for a breach of this undertaking the three companies are jointly liable to the plaintiff; and that, as in this State joint obligations are also several, the plaintiff may maintain an action against either of the defendants at his convenience. He seeks to bring this case within the decision of this court in *Wyman* v. *Railroad Company*, 4 Mo. App. 35, 39, in which Judge Hayden, after examining a number of decisions of other courts, declares it to be well settled that "if several common carriers, having each its own line, associate and form what is to the shipper a continuous line, and contract to carry goods through for an agreed price, which the shipper or consignee pays in one sum, and which the carriers divide among themselves, then as to other parties with whom they contract, they are liable jointly for a loss taking place on any part of the whole line." That was a case where a number of connecting railway companies had formed a voluntary association to run through freight-cars between Boston and St. Louis, called the "Blue Line Transit Company," and hence, on its facts, is not a precedent on which we can decide this case. Neither has

the case of *Watkins* v. *Railroad Company*, 8 Mo. App. 570, which the defendant invokes, any application to the facts before us.

For the purposes of this case, as it now stands, it is not necessary for us to decide whether an arrangement between connecting railway companies by which one of them sells a "through" ticket and gives a "through" check for baggage to a remote point over the roads of the others, makes them joint undertakers with the passenger, in such a sense that all, or either of them is liable for the defaults of the servants of the others. The question is of the greatest importance to the public and to the transportation companies; since, if the rule were established that such an arrangement has the effect contended for by the plaintiff, it might operate to break up the system of through ticketing and through checking, which is of great advantage to the travelling public, and presumably to the companies. On the other hand, when a traveller purchases a through ticket and a through check for his baggage, from one point to another distant point over several connecting lines, — say from New York to San Francisco, — and his baggage is not delivered to him by the last carrier, if he is to be required to institute a hopeless search for the purpose of discovering which carrier it is whose servants have lost or stolen it, or else go back to the point of starting and sue the first carrier, he will, in many cases, be left substantially without remedy. On account, therefore, of the importance of this question, and in view of the fact that it has been decided differently in different jurisdictions, we expressly pretermit its decision, hoping that, should it come before us again in this or in any other case, the Supreme Court will, in the meantime, have decided it.

For the purposes of this case we hold that where one railroad company sells to a traveller a through ticket and a through check for his baggage, over its own and one or more other connecting roads, and, in pursuance of the contract

thus made, the passenger is transported to the destination
called for by the ticket and the check, and his baggage is
delivered to him by the last carrier, the lock broken and a
portion of the contents stolen, the passenger showing these
facts under suitable allegations, is entitled to recover
damages from the last carrier, unless the last carrier shows
that he delivered the baggage in the same condition in
which he received it. We hold this upon the well-recog-
nized American doctrine, that such a contract is a contract
with each several carrier who, under it, undertakes the
transportation of the passenger and his baggage. *Railroad
Co.* v. *Fahey*, 52 Ill. 81; *Kessler* v. *Railroad Co.*, 61 N.
Y. 538; *Milnor* v. *Railroad Co.*, 53 N. Y. 363; *Knight* v.
*Railroad Co.*, 56 Me. 234; *Brooke* v. *Railroad Co.*, 15
Mich. 332. We may hold, with these cases, that such a
contract is a distinct contract with each carrier, without de-
ciding whether or not it is the joint contract of all the
carriers.

In reaching this conclusion we necessarily hold that evi-
dence that when the last carrier delivered the baggage to
the passenger or his agent, the package was broken open
and some of its contents missing, is *prima facie* evidence
that the loss happened through the negligence or fraud of
the last carrier, which evidence casts upon such carrier the
burden of proving that the loss happened while the baggage
was in the hands of some other carrier. It must be con-
fessed that, separate from any question of public or judicial
policy, this is about as weak a presumption as the law could
well raise upon any state of facts; for the mere fact that B.
delivers a thing to C. in a broken condition does not, when
considered as a mere question of moral evidence, raise any
presumption one way or the other as to whether the thing
was broken or whole when it came into the hands of B.
But it must be remembered that this is not a mere question
of what conclusion is morally deducible from the facts; it
is a question which concerns the burden of proof. The

burden of proof is the necessity of proof.   In general, the evidence to sustain the allegation must be produced by the party making it; but when, from the circumstances of the case, the other party can alone produce this evidence, there are many cases in which the law, to prevent a failure of justice, compels him to produce it; and it compels him to do this by making such slight circumstances against him as the party making the allegation may be able to show, conclusive against him unless he does produce it.   In so holding we are not establishing any new principle in the law of evidence, nor are we for the first time making a new application of an old principle.   It has been held by other courts, that where goods have been shipped by several connecting carriers and the last carrier makes only a partial delivery of them he must account for the loss, or pay damages. *Southern Express Co.* v. *Hess*, 53 Ala. 19, 24; *Laughlin* v. *Railroad Co.*, 28 Wis. 204; *Smith* v. *Railroad Co.*, 43 Barb. 225 (affirmed, see Index 41 N. Y. 620).   These decisions do not rest for support merely upon the principle of necessity.   They are supported by the rule that when a certain state of facts is shown to exist, it is (at least within certain limits) presumed to continue till the contrary appears.   The plaintiff shows that when his trunk was delivered to the Pennsylvania Railroad at New York, it had a lock on it, was locked, and had in it sixty silver dollars and two silk handkerchiefs; that when it was delivered by the defendant to the plaintiff's agent, the St. Louis Transfer Company, the lock was gone, and the money and the handkerchiefs were missing.   In the absence of any proof to the contrary produced by the defendant, the presumption holds that the trunk continued as it was when the plaintiff delivered it to the Pennsylvania Railroad in New York till it reached the hands of the defendant.   If it did not, the defendant may exonerate itself by showing that fact.

If we are right in these views, the learned judge erred in instructing the jury that the plaintiff was not entitled to

recover.   The judgment is therefore reversed and the cause remanded.   All the judges concur.

By LEWIS, P. J. — I concur in the conclusion reached, and generally in the reasoning by which it is supported; but not in all the views incidentally expressed in the foregoing opinion.

THOMPSON, J., delivered the opinion of the court on a motion for a rehearing.

We have endeavored to give the motion for a rehearing in this case that considerate attention to which such motions are entitled.

1. The point that the plaintiff did not set forth in his pleading the ground on which his right to recover was placed by the court, was considered by us before the opinion was filed, but we did not regard it as of sufficient importance to allude to it in the written opinion.   The suit was commenced before a justice of the peace; and it is sufficient in suits thus commenced that the statement of the cause of action filed apprise the defendant of the nature of the plaintiff's demand with such certainty that a second suit cannot be maintained for the same cause of action.   *McDonough* v. *Daly*, 6 Mo. App. 598.   And the rule that the *allegata* and *probata* must correspond does not apply in proceedings commenced in those courts as strictly as in pleadings in suits commenced in the Circuit Courts.   Thus, he may sue on an account and recover on a note, if he offers to surrender up the note.   *Lord* v. *Koenig*, 7 Mo. App. 453.   It cannot be contended that the statement in this case does not fulfil this requisite.

2. The respondent's counsel insists that the cases cited *ante*, p. 130, do not sustain the doctrine there announced, namely, that such a contract as the one shown in the evidence for the carriage of a passenger over several connecting lines, is not a distinct contract with each carrier

who undertakes to carry under it. No one knows better than the learned counsel that this is the doctrine of the American courts, they differing in this respect from the English courts, which hold that such a contract is a contract with the first carrier only. On re-examining those cases, we find that they do, all of them, either expressly hold, or in terms recognize this doctrine. They hold or recognize the doctrine that the railway company which sells a coupon ticket over its own and connecting roads, acts as the agent of the connecting companies for the purpose of making the contract of carriage over their roads.

3. It is urged that the court in the opinion errs as to the facts, in saying that the trunk was delivered "by the *servants* of the defendant company to the servants of the St. Louis Transfer Company." We are told that this is inaccurate ; that the trunk was delivered by the *Union Depot Company*, a distinct corporation, to the servants of the St. Louis Transfer Company. We cannot discover anything in the record which shows that there is such a corporation as the Union Depot Company, or that such a corporation ever had the custody of the trunk. The record shows that the train of the defendant which brought the plaintiff as a passenger, did not stop at East St. Louis, in Illinois, which the defendant, in its petition for a rehearing, says is the western terminus of its road, but that it ran into the Union Depot in the city of St. Louis, and that there a servant of the transfer company got the trunk to take it to the house to which the plaintiff had directed it to be taken, on Sixth Street. The record shows that the trunk was delivered to this servant of the transfer company in the baggage-room of the Union Depot ; but it does not say by whom it was delivered. The whole record, however, excludes the conclusion that it was delivered by any one but an agent of the defendant company. The liability of a carrier of a passenger's baggage is analogous to that of a carrier of goods, and it is well settled that a carrier of goods does not dis-

charge his contract till he has delivered, or offered to deliver, the goods. The defendant did not, in this case, discharge its contract to carry the trunk till it had delivered it at the end of its route, to the holder of the check. If it delivered it to an intermediate corporation for the purpose of effecting this delivery, then that corporation became in law its agent for the purpose of making such delivery. The word " servant " in law means the same as the word " agent." If the word " agent " had been substituted for the word " servant," in this part of the opinion, it would have answered the evidence more accurately, but would not have changed in any respect the conclusion of law depending thereupon.

4. The last point is unworthy of consideration. The learned counsel knows as a fact what we know from the context, that the word " defendant " on page 20 of the record, is a clerical error for the word " plaintiff." It would be a gross imputation upon the administration of justice, if advantage were allowed to be taken of such an obvious error in the record, in a civil case.

We see nothing in this motion for a rehearing but a renewal of points which were pressed upon us in the respondent's oral and printed arguments, and verbal criticisms upon the opinion of the court, which are without substantial merit. It is, therefore, overruled. All the judges concur.