Crouch v. ·The Louisville & Nashville Ry. ·Co.

J. W. CROUCH Appellant, v. THE LOUISVILLE AND
NASHVILLE RAILROAD COMPANY, Respondent.

**St. Louis Court of Appeals, November 11, 1890.**

1. **Common Carriers:** SHIPMENT TO POINT BEYOND CARRIER'S TER-
MINUS : COMMON-LAW LIABILITY. At common law a carrier, who
received goods for transportation to a point beyond his own line,
engages only to carry them safely and within a reasonable time to
the end of his line, and there deliver them to the next connecting
carrier for further transportation, unless the usage of business, or
his language or conduct, shows that he took the goods as carrier
for the whole route.

2. ——— : ——— : EVIDENCE OF CONTRACT TO CARRY TO DESTINATION.
The mere fact that, in the case of such a shipment, the carrier
receiving the goods gives a through rate of freight, does not take
the case out of this rule ; but the receipt by him of the freight for
the whole route is evidence of an undertaking by him to carry the
goods the entire distance.

3. ——— : ——— : BURDEN OF PROOF. In the absence of evidence of
such a contract, the burden is on the shipper, if he seeks to charge
the first carrier for an injury to the goods, to show that the injury
occurred on that carrier's line.

4. ——— : ——— : SUFFICIENCY OF EVIDENCE. Evidence in this cause
considered, and *held* not to establish such a liability on the part of
the first carrier, since it would have left the jury to mere surmise .
or conjecture as to whether the injury sued for occurred on that
carrier's line.

5. ——— : FOREIGN LAW : PRESUMPTIONS. There is no presumption
that the statute law of this state exists in another state ( Illinois);
and, in the case of a shipment made wholly without the limits of
this state, the liability of the carrier is not governed by our statute,
which, moreover, applies in terms only to contracts of transporta-
tion made in this state.

6. **Railroads:** POWERS OF AGENT. A mere agent of a railway com-
pany to solicit business ( and, *arguendo*, even a station agent ) has
no power to make for the company a contract for the carriage of
freight beyond the line of the company, unless such power has
been expressly conferred, or is to be implied from his previous con-
duct, on the principle that the company has allowed him to hold
himself out as possessing such a power.

*Appeal from the St. Louis City Circuit Court.*—Hon. DANIEL D. FISHER, Judge.

AFFIRMED.

*Given Campbell* and *C. M. Napton,* for appellant.

*Gibson, Bond & Gibson,* for respondent.

THOMPSON, J.—This action is prosecuted to enforce the common-law liability of the defendant, as a common carrier for hire, for damages alleged to have been received by a carload of twenty-one horses of the plaintiff, while in transit over its line from East St. Louis, Illinois, to Charleston, South Carolina. The answer imperfectly pleads a special contract, whereby ( among other exemptions) the defendant was exempted from liability beyond its own line; and the principal struggle in the case was, as to whether the plaintiff was bound by this contract. We have come to the conclusion that, in the state of the evidence, this question is immaterial; because the plaintiff adduced no evidence to charge the defendant with liability either under the special contract or at common law, and, therefore, the court did right in instructing the jury that the plaintiff could not recover.

By the principles of the common law, as established in this state, a common carrier, who receives goods for transportation to a point beyond his own line, engages only to carry them safely and within a reasonable time to the end of his own line, and deliver them to the next connecting carrier to continue or complete the transit, unless the usage of the business, or of the carrier, or his conduct or language, shows that he takes the parcel as carrier for the whole route. *Coates v. United States Express Co.,* 45 Mo. 238; *McCarthy v. Railroad,* 9 Mo. App. 159, 166; *Goldsmith v. Railroad,* 12 Mo. App. 479, 483. Nor does the fact that the carrier, so

receiving the goods, gives a through rate of freight, take the case out of this rule; but he is still deemed to have received them in the character of carrier for his own route, and of forwarding agent for the shipper for the remaining route. *McCarthy v. Railroad, supra; Goldsmith v. Railroad, supra.* Moreover, in the case of a shipment made wholly without the limits of the state, as was the one under consideration, it is immaterial that this rule of the common law may have been changed by ·our legislature; since there is no presumption that the positive or statute law of one state exists in another state; and our statute, moreover, applies in terms only to contracts of transportation made in this state. *Morrisey v. Wiggins Ferry Co.*, 47 Mo. 521; *Goldsmith v. Railroad, supra.* And in the case before us, as in the ·case last cited, the law of Illinois was not proved.

There was no evidence tending to show an agreement, express or implied, on the part of defendant to become liable for the defaults of the connecting lines. The receipt of the freight for the whole route has been said to be evidence of an undertaking by the first carrier for the whole distance (*Coates v. United States Express Co.*, 45 Mo. 238, 241); but here the freight was paid to the last carrier at the end of the transit, as is always done where the freight follows the goods, and that carrier's share of it was separately itemized on the bill. If the declarations of Finch are appealed to for the purpose of showing such an undertaking, it is to be observed that he was a mere agent of the defendant to solicit business; and even a station agent has no power to make such a contract, unless it has been expressly conferred upon him, or unless it is to be implied from his previous conduct, on the principle that the company has allowed him to hold himself out as possessing such power. *Grover, etc., Co. v. Railroad*, 70 Mo. 672; *Turner v. Railroad*, 20 Mo. App. 632.

Although many complaints are made of the rulings. of the trial court upon questions of evidence, yet it does not appear that the court made any ruling, which in any way prevented the plaintiff from proving, if he could, that the injury to the horses occurred on the defendant's line. On the contrary, there was no evidence whatever tending to show that such was the fact. But the evidence of both parties did show that the injury to them was first discovered at Augusta, Georgia, where they were unloaded to be fed, and that, when so unloaded, they were in transit on the line of the Georgia Railroad Company, which was one of the lines connecting with that of the defendant, though in the car of the defendant in which they had been originally loaded. The plaintiff's theory of fact seems to have been that the horses were injured in consequence of too many having been crowded into one car. But on this point it is to be observed that the evidence of the plaintiff, and one of his witnesses, shows that twenty-one horses were delivered by the plaintiff to the defendant, for shipment *in one car*, from East St. Louis to Charleston ; that the plaintiff did not superintend the loading of them, but gave directions to the defendant's agent to ship them in a *large* car, or, if he could not do this, to return some of them ; and that this direction was obeyed by shipping them in the largest car used by the defendant for that purpose on its line, which was a car thirty feet in length. Nor was there any evidence that, in point of fact, the car was overloaded or not properly loaded ; but on the contrary all the evidence on the point was to the effect that it was properly loaded. In short, there was no evidence whatever as to *where or how* the horses came to be injured, with the exception of evidence to the effect that some of them were found to be jammed, mashed, rubbed, and to have bones broken, when they were unloaded at Augusta, and that some of them were similarly injured when they reached.

Charleston. If, therefore, the case had been put to the jury, they would have been left to mere conjecture and surmise as to whether the horses were injured on the defendant's line, or on the line of the Georgia Railroad Company, defendant's connecting carrier.

Nor is there any presumption of law which supplies the want of such evidence. The statement, that a common carrier is not liable for loss or injury happening beyond his own line, is tantamount to the statement that, in order to charge him, the burden is on the plaintiff to show that the loss or damage happened on his line. Where the plaintiff merely shows nondelivery, or delivery in a damaged condition, by the terminal carrier, the presumption is—although it may be a weak one—that *that* carrier has been at fault, and, *prima facie*, the shipper has a right of action against him. *Shriver v. Railroad*, 24 Minn. 506, 512 ; *Smith v. Railroad*, 43 Barb. 225 ; s. c., affirmed, see index, 41 N. Y. 620 ; *Laughlin v. Railroad*, 28 Wis. 204 ; *Southern Express Co. v. Hess*, 53 Ala. 19, 24 ; *Lin v. Railroad*, 10 Mo. App. 125, 131.

If we turn to the other horn of the plaintiff's dilemma, the special contract,—and it was upon that that this suit was originally brought,—it is not questioned that, by its terms, he cannot recover on the evidence here presented. It is thus clear that, whatever right of action is disclosed by the plaintiff's evidence is a right of action, not against the defendant, but against a connecting carrier.

The judgment will, therefore, be affirmed. All the judges concur.