HANNAH FLYNN, Respondent, v. THE ST. LOUIS AND SAN FRANCISCO RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, January 27, 1891.

1. **Instructions**: REFUSAL WHEN JUSTIFIABLE. When a party offers as many as thirteen instructions, some of which are objectionable, the court is justified in refusing all because of their number, especially where it has already properly instructed the jury on all the issues.

2. **Common Carriers**: LIABILITY OF TERMINAL CARRIER. When goods are received by one of several connecting carriers for shipment beyond its line, and are properly packed or loaded when thus received, but are delivered by the terminal carrier in a damaged condition the presumption is, in the absence of proof to the contrary, that the goods were damaged on the line of such terminal carrier.

3. ———: SPECIAL CONTRACT: PROOF OF NEGLIGENCE. When a special contract for the carriage of goods is established and the case is brought within the exemptions of such contract, and when the shipper then seeks to recover on the ground of negligence in the carriage of the goods, he has the burden of proving such negligence. But there is sufficient evidence of such negligence, when it appears that the goods were delivered to the carrier in proper condition, and that, when delivered by the carrier, the breakage of them was such as does not ordinarily occur when they are transported with due care; and this rule is applicable to a delivery of goods in a damaged condition by the last of several connecting carriers, when a delivery of them in good condition to the first carrier is shown.

*Appeal from the St. Louis City Circuit Court.*—Hon. Leroy B. Valliant, Judge.

Affirmed.

*E. D. Kenna* and *Adiel Sherwood,* for appellant.

(1) The bill of lading introduced in evidence by the defendant is the express contract under whose terms this shipment was made. The law presumes that the consignor has read the bill of lading delivered to him, as it was his duty to read it, and its receipt by him without dissent is conclusive in the absence of fraud, making the bill of lading the express contract between him and the carrier. *Shelton v. Despatch Co.,* 59 N. Y. 258; *Nelson v. Railroad,* 48 N. Y. 498; *Moriarity v. Herndon,* 1 Daly, 227; *Grace v. Adams,* 100 Mass. 505; *O'Brien v. Kinney,* 74 Mo. 125. The authority of Miss Flynn to enter into a special contract, which shall be binding on plaintiff, is to be presumed, and the carrier is under no obligation to make inquiry. Her agreement upon the terms and conditions of transportation is the agreement of plaintiff, as she was the agent for that purpose. *Moriarity v. Herndon,* 1 Daly, 227. (2) The "owner's risk" limitation in the special contract inured to the benefit of the connecting carrier, this

defendant. *Kiff v. Railroad*, 32 Kan. 263; *Halliday v. Railroad*, 74 Mo., *loc. cit.* 162. (3) The instruction, in the nature of a demurrer to the evidence, at the close of the whole case, ought to have been given. Defendant, in producing this special contract, shifted the burden of proof, and was entitled to a verdict, unless plaintiff then and thereafter showed that defendant's negligence had supervened, and was the proximate cause of the injury. This being true, and there being no evidence of defendant's negligence before the court and jury, the instruction was correct, and it was worse than useless to submit the case. *Kiff v. Railroad*, 32 Kan. 263; *Railroad v. Harper*, 44 Ark. 208; *Heil v. Railroad*, 16 Mo. App. 370; *Exp. Co. v. Perkins*, 42 Ill. 459; *Bradstreet v. Heran*, 2 Blatch. 117; Abb. on Ship. [Story's Ed.] 216; *The California*, 1 Sawy. 12; Hutch. Car., secs. 767, 768; *Railroad v. Talbot*, 39 Ark. 523; *Railroad v. Corcoran*, 40 Ark. 375; *Railroad v. Hally*, 25 Kan. 35; *Muser v. Holland*, 17 Blatch. C. C. 412; *Carey v. Atkins*, 6 Ben. 562; *Railroad v. Bone*, 52 Ark. 26; *Lamb v. Railroad*, 46 N. Y. 278, 281, 282; *Farnham v. Railroad*, 55 Pa. St. 53; *Steamboat v. Carney*, 5 Kan. 645; *Morrison v. Construction Co.*, 19 Am. R. R. Repts. 312; *Grace v. Adams*, 100 Mass. 505; *Ward v. Andrews*, 3 Mo. App. 277; *Nolan v. Shickle*, 3 Mo. App. 304, 305; *Shultz v. Railroad*, 36 Mo. 32; *Czeh v. Nav. Co.*, L. R. 3 C. P. 18; *Dorr v. Nav. Co.*, 11 N. Y. 492, 493; *Stump v. Hutchinson*, 11 Pa. St. 533; *The Periere*, 8 Ben. 301; *Lamb v. Railroad*, 7 Allen, 98; *Patterson v. Clyde*, 67 Pa. St. 500; *Railroad v. Reeves*, 10 Wall. 189, 190; *York v. Railroad*, 3 Wall. 107; *Muddle v. Stride*, 9 Car. & Payne, 380; *Harvey v. Railroad*, 6 Mo. App. 585; *Cotton v. Railroad*, 67 Pa. St. 211; *Witting v. Railroad*, 28 Mo. App. 103. A demurrer to the evidence, or an instruction in the nature of a demurrer, should always be sustained when negligence is not shown. *Kiff v. Railroad*, 32

Kan. 263; *Morrison v. Cons. Co.*, 19 Am. R. R. Repts. 312; *Exp. Co. v. Perkins*, 42 Ill. 459. And the fact that goods or wares are broken or damaged in transit is not proof of negligence, and raises no inference of negligence, and from it negligence cannot be presumed. *Harvey v. Railroad*, 6 Mo. App. 585; *Lamb v. Railroad*, 7 Allen, 98; *Ward v. Andrews*, 3 Mo. App., *loc. cit.* 277; *Nolan v. Shickle*, 3 Mo. App., *loc. cit.* 304, 305. For the presumption that every man does his duty runs in favor of the carrier. *Farnham v. Railroad*, 55 Pa. St. 53; *Waldron v. Railroad*, 8 Barb. 394; *Lord Halifax Case*, Bull. N. P. 298; *Hartwell v. Root*, 19 Johns. 345. The carrier is not liable for the defective manner in which goods are secured or packed for shipment, nor for inherent defects in the goods themselves. *Railroad v. Richardson*, 41 L. J. & C. P. 60; *Barbour v. Railroad*, 34 L. T. N. S. 67. (4) In the absence of the special contract, defendant was entitled to judgment. Plaintiff did not show that the injury occurred on the line of defendant's road. *Kiff v. Railroad*, 32 Kan. 263; *Ellsworth v. Tartt*, 26 Ala. 733. Nor did the plaintiff show that defendant and the Eureka Springs Railway Company were partners, and jointly liable for any injury to the goods on any portion of the through line. There must be a communion of profit before there can be a partnership. Here there was no joint expense, no joint property, no joint fund, no joint profits, and no arrangement to share loss and profit. Hence, there was no partnership. *Parker v. McLure*, 15 Wend. 187; Collyer on Part., secs. 18, 21, 22; *Jackson v. Robinson*, 3 Mason, 141. Where a rate of freight, fixed by mutual agreement, is charged for through service by several carriers, and collected by the last carrier, the carriers are not partners, and there is no joint liability. *Gass v. Railroad*, 99 Mass. 220; *Ins. Co. v. Railroad*, 104 U. S. 146; *Myrick v. Gordon*, 20 N. Y. 96; *Stratton v. Railroad*, 2 E. D. Smith, 184; *Watkins v. Railroad*, 8

Mo. App. 570. Nor did the plaintiff show that the goods were in good order when delivered to defendant. In the absence of evidence that goods were delivered in good order to the first carrier, it cannot be inferred that they were in good order when received by the second carrier. Plaintiff must show that the second carrier received them in good order, for the carrier has no means of opening packages and examining their contents. *Railroad v. Kirkwood*, 45 Mich. 51.

*J. H. Trembly*, for respondent.

(1) Respondent made out a *prima facie* case against appellant by showing that the goods had been delivered at Eureka Springs to either of said railway companies in good condition, and delivered to her by appellant at St. Louis in a damaged condition. *Lin v. Railroad*, 10 Mo. App. 125. Appellant could then evade its common-law liability only by showing that it was exempted from such liability by the terms of a special contract. *Levering v. Ins. Co.*, 42 Mo. 88; *Read v. Railroad*, 60 Mo. 199. (2) But such special contract must be supported by a valuable consideration. *McFadden v. Railroad*, 92 Mo. 343. Even if in the case at bar the proof of negligence was ultimately necessary, respondent could justly contend that negligence was proven in a manner sanctioned by the authorities of this state. In such cases after proof of the alleged special contract by defendant whereby the carrier is exempted from its common-law liability, the plaintiff may still prove negligence on the part of defendant by simply showing that the goods could have been safely transported by the exercise of reasonable skill and attention on the part of the carrier. The evidence here discloses not only that the goods could have been safely transported by the exercise of reasonable skill and attention on the part of the carrier, but also that

they were in fact safely transported over the said roads (most of them in the same crates and boxes) from St. Louis to Eureka, some eight months prior to that time. *Read v. Railroad*, 60 Mo. 199 ; *Wolf v. Exp. Co.*, 43 Mo. 421.

THOMPSON, J.—This action is brought to recover, under the common-law liability of the defendant as a common carrier for hire, for the breakage of a quantity of household furniture intrusted to the defendant by the plaintiff for carriage. The plaintiff had a verdict and judgment, and the defendant appeals.

The petition is as follows :

" Plaintiff states that the defendant is a corporation duly created by the laws of Missouri, and was, at the date hereinafter mentioned, a common carrier of freight and passengers for hire ; that the said defendant, as such common carrier, on or about the tenth day of August, 1889, received of plaintiff, to be transported for her from Eureka Springs, Arkansas, to St. Louis, Missouri, one carload of household and kitchen furniture in good condition, and that said defendant as such common carrier, for and in consideration of the sum of $70 to it paid by plaintiff, undertook and agreed to safely transport said furniture to the said city of St. Louis, and there deliver the same to plaintiff ; that said defendant failed to safely transport plaintiff's said furniture to the said city of St. Louis, but by careless and negligent handling of said car and furniture defendant broke, cracked, marred and scratched said furniture, to plaintiff's damage in the sum of $225.50," etc.

The answer, after a general denial, proceeds as follows :

"Further answering defendant says that the Eureka Springs Railway Company is a corporation under the laws of Missouri and Arkansas, whose line of road runs from Eureka Springs, Arkansas, to Seligman,

Missouri, at which place it joins with the line of the St. Louis & San Francisco railway.

"That, upon shipments made to St. Louis, defendant and said company divided the money received for carriage of goods under the terms of a joint-rate sheet, formulated by the two companies, subject to the western classification, which rate sheet was in full force on August 12, 1889, and under its terms and of said western classification two rates were named for the carriage of goods from Eureka Springs to St. Louis, one the regular rate, the other a special rate, that is a rate less in amount than the regular rate which was to apply when goods were tendered and accepted under the terms of a special contract of shipment.

"That on August 12, 1889, plaintiff tendered certain household goods to the Eureka Springs Railway Company at Eureka Springs, Arkansas, and then and there agreed to and with said company, and did ship them under a special contract at the reduced rate provided as aforesaid ; and in consideration thereof it was then and there agreed that said goods were to be taken and accepted by said company at 'owner's risk,' while in transit ; and further, among other things, it was agreed that, in case of partial or total loss through actual negligence, plaintiff could not recover any sum in excess of $5 per hundredweight for the part or whole of said goods so lost or destroyed, and then and there, at and before the receipt of said goods by said company, a bill of lading was signed in duplicate by its agent, one of which was retained, and the original delivered to plaintiff, and then and there, before such delivery, the following indorsement upon the face thereof was made, to-wit :    'O. R. Rel'sd Val. $5 per cwt. in case of total loss.'

"Further answering, defendant says that it was also then and there agreed by and between plaintiff and said company that it was not to be liable for any loss of said

goods, or any breakage or damage thereof, by or because of 'the dangers incident to railroad transportation and unavoidable accidents,' and that 'all glass and glassware in boxes, looking glasses, marble, stoves, stove plate and light castings' were taken and accepted at 'owner's risk of breakage,' and that 'cabinet ware and furniture not boxed,' were taken at 'owner's risk of breakage or damage by chafing.'

"That, if all or any part of said goods were damaged or broken, which defendant denies, still plaintiff, under the terms and conditions of the special contract aforesaid, cannot have and maintain this action, and defendant prays judgment.

"That by the 'western classification' is meant a set of rules and regulations adopted by the western railroads, among them defendant and the Eureka Springs Railway Company, for the purpose of classifying all goods tendered for shipment, and fixing the terms of transportation thereof in connection with the joint-rate sheet aforesaid."

To this the plaintiff filed the following reply:

"Now comes plaintiff in above-entitled cause, and for reply to defendant's amended answer filed herein denies that she executed or in any way agreed to the alleged special contract of shipment of her said goods, set out in said defendant's answer. Further replying, plaintiff admits that she shipped her said goods over the Eureka Springs railway, and the St. Louis & San Francisco railway, doing business jointly, as in the amended answer averred, but denies that she shipped the same at a reduced or special rate.

"Plaintiff avers that she paid said railroad for the transportation of her said goods more than the maximum amount which railroads are by law allowed to charge for transporting similar goods from Eureka Springs, Arkansas, to St. Louis, Missouri.

"[ Therefore, plaintiff says that, even if she had executed and agreed to the said alleged special contract of shipment, there was no consideration therefor, and the same should not operate to defeat the cause of action set out in her petition.]"

The last paragraph of this reply, which we have inserted in the brackets was stricken out by the court on motion of the defendant, and the rest was allowed to stand.

On the issues thus framed the parties went to trial before a jury. The plaintiff gave evidence tending to show that the furniture mentioned in her petition was properly packed at Eureka Springs, in Arkansas, and properly loaded in one of the defendant's cars for shipment to St. Louis ; that, when it arrived in St. Louis, it was badly broken and damaged ; and that the cost of repairing it, so that it could be used, would be the sum of $222.50, for which sum the action is brought, and for which the jury rendered their verdict.

The defendant gave evidence to the contradictory effect, that the goods were not broken when delivered to the plaintiff, in St. Louis, and that they were broken in consequence of being improperly packed and improperly loaded in the car.

The evidence showed that the goods were loaded in the car at Eureka Springs by a person engaged in the transfer business at that place, who had hauled them from the plaintiff's house to the railroad station ; but the evidence does not show at whose request he did the loading. The goods came through to St. Louis in the car in which they had been loaded at Eureka Springs ; but no evidence was offered by either party as to the manner in which the car was hauled and switched on the way ; whether with reasonable care and without unnecessary jolting or otherwise. Nor was there any direct evidence offered by either party, tending to show whether the injury to the goods occurred on the Eureka Springs Railway Company's road or on the defendant's road.

But the evidence did show that these two roads were independent corporations having connecting arrangements for the through transportation of freight; that, as such connecting carriers, they were operating under a system of classification and tariffs for the through transportation of freight, adopted by about forty railroads, which classification was known as the " Western classification;" that, under this classification, household goods in carloads shipped at "owner's risk" are classed as B, while the same goods shipped in carloads at "carrier's risk," are classed as A ; that, where goods are shipped at " carrier's risk," the rate of freight is one class higher than where shipped at "owner's risk;" that these goods, classed as B, that is to say, as being shipped at " owner's risk," were shipped from Eureka Springs to St. Louis at the rate of thirty-five cents per hundredweight, according to the western classification and freight schedules, whereas, if they had been shipped at "carrier's risk," the tariff would have been forty-eight cents per hundredweight.

But there was no evidence tending to show that this difference in rate was known to the plaintiff, or to anyone who acted for her in making the contract of shipment, or that either the Eureka Springs Railway Company, or the defendant, or anyone acting for either of them, took any pains to communicate this fact to the plaintiff, or to anyone acting for her.

There was, however, evidence tending to show that the step-daughter of the plaintiff went to the railway station at Eureka Springs to see to the shipment of the goods, and that the agent of the Eureka Springs Railway Company made out in duplicate the bill of lading below set out, and delivered one original of it to the young lady, which she signed at his request, he retaining the other, which was not signed by her. The young lady testified that her mother gave her no authority to sign the bill of lading for her, and the plaintiff testified

that no one had such authority.  No other contract, based on a higher classification and at carrier's risk, was tendered to her, and the defendant's evidence was that this is the contract of shipment which they habitually tendered to shippers in like circumstances.  The bill of lading is as follows :

"Form 36.                              10–88–5 M.

"Eureka Springs Railway, Duplicate.

"EUREKA SPRINGS, ARK., August 12, 1889.

"Received of owner, City,

"By the Eureka Springs Railway Company, the following property, in apparent good order ( except as noted ) marked and consigned as in the margin, which they agree to deliver with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order ( the dangers incident to railroad transportation, loss or damage by fire while at depots or stations, loss of combustible articles by fire while in transit, and unavoidable accidents excepted ) ; at Seligman, Missouri, upon the payment of charges.

## "CONDITIONS.

"The company does not agree to carry the property by any particular train, nor in time for any particular market.  Oil and other liquids at owner's risk of leakage.  Liquids in glass or earthen, drugs and medicines, in boxes, glass and glassware in boxes, looking glasses, marbles, stoves, stove plates and light castings, earthen and queensware at owner's risk of breakage.  Agricultural implements, cabinet ware and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing.  Oysters, poultry, dressed hogs, fresh meats, and provisions of all kinds, trees, shrubbery and fruit, and all perishable property, at owner's risk of frost or decay.

"*To Mrs. Hannah Flynn, Consignee, St. Louis, Mo.*

| " Marks and Numbers. | Articles. | Estimated Weight. Subject to Correction. |
|---|---|---|
| | H. H. Goods, O. R. Rels' d, Val. $5 per cwt. etc. S. F. 4086.'' | |

The witnesses for the defendant were allowed to interpret the marginal words, " O. R. Rel'sd Val. $5 per cwt.," etc., as meaning that the goods were shipped at owner's risk, and that the liability of the carrier, in case of total loss, was not to exceed $5 per hundredweight; but there was no evidence that these abbreviated expressions were interpreted by the agent of the Eureka Springs railway, or by anyone acting for it, to the plaintiff's step-daughter, or to anyone acting for the plaintiff, or that she, or anyone acting for her, had any knowledge of their meaning.

Upon this evidence the court, of its own motion, instructed the jury as follows:

" 1.  If you believe from the evidence that the plaintiff's goods were delivered at Eureka Springs to the Eureka Springs Railway Company in good condition, and that the same were delivered to the plaintiff in St. Louis by the defendant in a damaged condition, then you should find for the plaintiff, unless you find for the defendant on one or more of the instructions here following:

" 2.  If you believe from the evidence that the injury, if any, to the goods was only the usual wear and tear incident to such articles in ordinary railway transportation, you should find for defendant.

" 3.  If you believe from the evidence that the goods in question were carelessly or improperly packed in the car, and that the injury, if any, to the same was the

result of such careless or negligent packing, you should find for the defendant.

"4.  If you believe from the evidence that, when the goods were delivered to the Eureka Springs Railway Company for transportation, the plaintiff accepted from that company a bill of lading, of which the paper read in evidence purporting to be a copy was a copy, and that the same was accepted by her in consideration of the railroad company undertaking to carry the goods at a rate less than the regular rate, then you should find for the defendant.

"5.  If you find for the plaintiff, you should assess her damages at such sum as you may believe from the evidence is sufficient to compensate her for the injury to her goods, not, however, exceeding the sum of $222.50."

To each of which the defendant excepted.

The defendant requested, and the court refused, thirteen instructions.  We do not deem it necessary to set out these requests for instructions for several reasons:  *First.*  The jury were instructed, in the instructions which the court gave of its own motion, with adequate fulness, and in a manner very favorable to the defendant.  Where the jury are properly instructed on all the issues, no error is committed in refusing any number of requests for instructions, however well drawn.

*Second.*  On principles heretofore decided by this court and by the supreme court, the court was justified in refusing all of these instructions by reason of their number alone.  *Crawshaw v. Sumner*, 56 Mo. 517; *Desberger v. Harrington*, 28 Mo. App. 632.

*Third.*  We think it just to add that, in our judgment, some of them were argumentative and others unsound in point of law ; and, where such a number of instructions is tendered to the trial judge, some of which are bad, he is not bound to wade through them

all for the purpose of selecting those which may possibly be unobjectionable, especially where, of his own motion, he instructs the jury properly upon all the issues. With these observations, we overrule the assignment of error that the court erred in refusing the instructions tendered by the defendant.

We come now to speak more particularly of the assignment or error, which questions the action of the trial court in giving the above instructions of its own motion. These instructions succinctly covered all the issues, and further extensions and explanations would have tended to confuse rather than to enlighten the jury. The fourth one, which relates to the special defense set up by the defendant, decides every contradictory question in its favor as matter of law. Laying out of view all other questions, it exonerated the defendant entirely, provided the jury should find that the bill of lading, containing the special contracts above set out, was accepted by the plaintiff in consideration of an agreement to carry the goods at less than the regular rate, of which fact, as already shown, there was no evidence. As we have already stated the evidence showed at most that the contract was handed to her, as it was to all other shippers under like circumstances, without any explanation that the rate charged was less than the regular rate, or that the goods could be shipped at a higher rate at the carrier's risk. Moreover, no evidence, whatever, was given making this contract a contract between the plaintiff and the defendant railway company. By its terms, it is a contract between the plaintiff and the Eureka Springs Railway Company. By its terms that company agrees to deliver the goods, " at Seligman, Missouri, upon the payment of charges," and to do nothing else. It neither agrees to forward them to St. Louis, nor to deliver them to any connecting carrier to be thus forwarded ; nor does the contract stipulate, as these contracts often do, that the conditions therein

named shall inure to the benefit of any connecting carrier. Outside of this special contract there was no evidence that the plaintiff, or anyone for her, ever authorized the Eureka Springs Railway Company to make a similar agreement with the defendant railway company, or that the two railway companies ever in effect made such an agreement for the forwarding of the goods. So far as the evidence discloses, the defendant railway company, therefore, received the goods from the Eureka Springs Railway Company at Seligman, which was the terminus of the Eureka Springs railway, and forwarded them to St. Louis subject to its common-law liability as a carrier. Certainly, then, there is no ground on which the defendant can complain of these instructions.

But the most serious complaint is the action of the trial court in submitting the case to the jury at all. In dealing with this assignment of error, we do not regard it as material whether the case is covered by the special contract or not. In either case there was evidence to take the case to the jury. The able argument adduced in support of this assignment of error proceeds on the assumption, that there was no evidence tending to show either of the following propositions of fact: *First.* That the Eureka Springs Railway Company and the defendant were partners ; *second*, that the injury happened on the line of the defendant's road ; *third*, that the goods were in good order when delivered to the defendant at Seligman. It must be conceded that there was no direct evidence to establish either of these propositions of fact. Certainly there was no evidence which would have authorized the court to submit to the jury the question, whether the two railways were doing business as partners.

The question, therefore, remains, whether, in a case where it is merely shown that goods are delivered to one carrier for shipment to a point beyond its line, properly

packed and loaded, and that the same goods are delivered in bad order by the terminal carrier, and there is no direct evidence speaking upon the question, when, how or where the goods were injured, and the terminal carrier offers no evidence tending to show in what condition the goods were when it received them, the jury will be authorized to infer that the injury happened on the line of the terminal carrier. Decisions are cited from some of the courts of other states to show that in such cases the shipper must show affirmatively that the goods were injured on the line of the terminal carrier. This court has, however, held, in accordance with decisions of other states, that in such a case the burden is on the terminal carrier to show that the goods were damaged when they came upon his line. *Lin v. Railroad*, 10 Mo. App. 125, 131; *Shriver v. Railroad*, 24 Minn. 506, 512; *Smith v. Railroad*, 43 Barb. (N. Y.) 225; s. c., affirmed, 41 N. Y. 620; *Laughlin v. Railroad*, 28 Wis. 204; *Southern Express Co. v. Hess*, 53 Ala. 19, 24. We have also recently held, in conformity with the same principle, that the first carrier cannot be charged without evidence that the damage happened on his line. *Crouch v. Railroad*, 42 Mo. App. 248. This is the only rule which offers any protection to the shipper, except in cases where the goods are lost in a fire, shipwreck, railway accident or in some catastrophe of a public nature. Where, as in a case like the present, the goods are committed to the initial carrier, and placed in a car on the road of such carrier, and the car is sealed and thus hauled through over the connecting roads to its final destination, and the goods are found broken at the terminus, the shipper can seldom or never, from the nature of the case, find out and prove what negligence in drawing the train, or in shunting or switching the car, or in shunting other cars against it, may have produced the injury. The rule above invoked would leave him absolutely helpless and without remedy in nearly

all cases.  On the other hand, each carrier has the opportunity of examining the goods, delivered to it by a connecting carrier, for the purpose of ascertaining whether they are in good condition.  We have said, in dealing with this question in the case of *Lin v. Railroad, supra*, that the burden of proof is the *necessity of proof*.  No presumption of negligence can attach to either carrier, except the last, in the absence of evidence that either of such carriers delivered the goods to its connecting carrier in a damaged condition ; as to them the presumption of right acting exonerates them.  But this presumption of right acting is repelled, as to the terminal carrier, by the fact of the goods having been delivered by him in a damaged condition.  The means of knowledge are within his power, but not ordinarily within the power of the shipper, and he may protect himself, if blameless, by showing that the goods came into his hands in the same condition in which he delivered them ; and thus the responsibility may be shifted backward from one carrier to another, until it is fastened upon the one who is really to blame.  They, in undertaking, for their gain, as well as for the public advantage, to make and execute through contracts of shipment, have the power of fixing the responsibility where it belongs, and of adjusting the loss among themselves.  The shipper has no such power.  Their servants will never, as his witnesses, accuse themselves of negligence and dereliction of duty, even where it is possible for him, as in nearly all cases it is not, to form a conjecture as to the part of the general line of transit on which the injury happened.  Where goods are shipped from Eastport, in Maine, to Portland, in Oregon, the rule invoked by the defendant would oblige the shippers to take depositions of the freight handlers and freight-train employes of all the connecting roads.  And then to what purpose would it be ?  Would any of them give evidence which would cast the responsibility on their employers ?  Would any of them accuse themselves of negligence ?

We finally come to deal with that part of the defendant's argument, which assumes that the case is covered by the special contract which places the goods at the owner's risk of breakage. Numerous cases are cited to the proposition that, where the carrier shows a special contract containing such an exemption, he thereby casts the burden of giving affirmative evidence of negligence upon the shipper, and hence, if the shipper gives no such affirmative evidence of negligence, he is not entitled to go to the jury, Among the cases thus cited are *Witting v. Railroad*, 28 Mo. App. 103. That case was certified to the supreme court on a division of opinion among the judges of this court as to the propriety of an instruction on the question of the burden of proof, and the opinion of the supreme court has lately been handed down, affirming this court, and holding that where the carrier proves the special contract, and proves a case within the terms of its exemptions, he need not give evidence to show that he was not negligent, but that the shipper must in such a case give affirmative evidence of negligence. But the supreme court also held that evidence as to the character and condition of the goods, and the manner in which they are packed when delivered for shipment, and of the fact of their being badly broken when delivered by him at the end of the transit, and of the character and extent of the breakage, may be such as to afford inferential *evidence of negligence* by the carrier, sufficient to take the case to the jury. In other words, the court held that the shipper must in such a case recover on affirmative evidence of negligence, and that he gives such evidence when he shows the manner in which the goods were packed, their condition when delivered to the carrier, and a breakage when redelivered by him such as does not ordinarily occur where such goods are transported with due care. On this point Judge BLACK, speaking for the court, says ( 101 Mo., page 641 ): "There is evidence tending to show that the fountain was properly

packed, and was delivered to the defendant in good order. It was badly broken when placed in the defendant's warehouse at St. Louis. The evidence of plaintiff and his brother is that the crate was then broken on one side, and that one of the inside stays was broken and the others out of place. All this tends to show want of care on the part of defendant. Had the plaintiff brought this suit in the circuit court by declaring on the contract, setting out its provisions, and founding his case on negligence only, we think the evidence would have entitled him to go to the jury. It will not do to say the evidence shows no more than the simple fact that the apparatus was broken. The very circumstances, which disclose this fact, tend to show very great negligence on the part of the defendant. It is enough for the plaintiff to disclose circumstances sufficient to raise a fair inference of negligence. We can say with safety that such a breakage does not ordinarily occur where the property is transported with due care. There is an abundance of evidence to entitle the plaintiff to go to the jury on the issue of negligence, and especially is this so, since the means of showing how the accident occurred is with the defendant and not the plaintiff." The same language may apply with equal force to the extraordinary amount of breakage shown by the plaintiff's evidence in this case ; and, as already stated, we hold, in comformity with our rulings in *Lin v. Railroad, supra*, and *Crouch v. Railroad, supra*, that the principle applies equally as against the last of several connecting carriers, where goods are delivered to the first in good condition and redelivered by the last in broken or damaged condition.

The judgment will be affirmed. All the judges concur.