HURST, Respondent, v. ST. LOUIS & SAN FRAN-
CISCO RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, February 27, 1906.

1. **COMMON CARRIERS: Connecting Line: Diverting Shipment.**
Where freight was received by a railroad company to ship to
a certain point, and the shipment while in transit was di-
verted by the shipper to another point, which the shipper had
a right to do according to a custom between him and the car-
rier, the carrier was under contract to carry to the new des-
tination, though the route to which the shipment was diverted
was over a connecting line.

2. ———: ———: ———. But if the contract for carriage over
the diverted route was made with the connecting carrier, the
receiving carrier was not liable for loss occurring on that line.

3. ———: **Special Acts of Negligence: Instructions.** In an action
by a shipper for damage to freight caused by certain alleged
acts of negligence of the carrier, instructions authorizing a
verdict for plaintiff, without requiring the jury to find that the
damage was caused by the acts of negligence alleged, were
erroneous.

4. ———: **Limiting Liability: Burden of Proof.** In an action for
damages to freight while in transit, it is sufficient for the ship-
per to allege and prove that the freight was delivered to the
carrier in a sound condition and redelivered to the shipper
or consignee at destination in a damaged condition. The bur-
den is then on the carrier to show that the damage was
caused by the act of God, or was due to some cause for which
the contract of shipment excepted liability.

5. ———: ———: **Special Acts of Negligence.** But where a pe-
tition in such case alleged certain specified acts of negligence
as the cause of the damage, the plaintiff did not cast the bur-
den upon defendant by merely proving the delivery in a sound
condition and redelivery in a damaged condition; he was
obliged to prove the negligence.

6. ———: **Special Acts of Negligence: Prima Facie Case: Dead
Freight.** Where the shipper sued for damage to his apples
caused by closing the ventilators of the car in which they
were shipped, he made out a prima facie case by showing the
delivery in a sound condition and the redelivery in a damaged

condition, and that the ventilators were open when the car left the starting point and closed when it reached its destination; it was not necessary to go further and prove positively that the ventilators were closed by the defendant's employees.

7. ———: **Duty of Shipper to Diminish Loss.** The shipper had a right to rely upon prompt performance of the contract of carriage by the carrier, and was not obliged in such case to take his freight from the carrier's custody while stopped en route in order to save it from damage.

8. ———: **Negligence of Carrier.** Where a shipper of apples piled them on the right of way of the railroad company by direction of the company's agent, and the company unloaded a lot of coal near the place against the shipper's protest, so that the coal dust sifted through the cracks in the barrels and damaged the apples, the company was liable for such damage.

Appeal from Barry Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED (*with directions*).

*L. F. Parker* and *Woodruff & Mann* for appellant.

(1)    The rule in this State has been time and again stated to be, that if the pleader alleges specific acts of negligence as cause of the injury to himself or his property, he must prove the acts alleged, else he will fail in his action. Galm v. Railway, 87 S. W. 1015; Farr v. Express Co., 100 Mo. App. 574, 75 S. W. 183; Chitty v. Railroad, 148 Mo. 75, 49 S. W. 868; McManamee v. Railroad, 135 Mo. 447, 37 S. W. 119; Buffington v. Railroad, 64 Mo. 246; Waldhier v. Railroad, 71 Mo. 516; McCarty v. Rood Hotel Co., 144 Mo. 397, 46 S. W. 172; Feary v. Railroad, 162 Mo. 96, 62 S. W. 452; Bartley v. Railroad, 148 Mo. 124-139, 49 S. W. 840; Pryor v. Railroad, 85 Mo. App. 367, 378. (2) In this case instruction No. 1, given at the request of plaintiff, is erroneous in that it does not submit to the jury the question as to whether "during transit the vents of said car were carelessly and negligently

closed, and permitted to remain closed; that by reason of the vents of said car being closed and remaining closed during transit, said apples were heated and scalded and damaged by reason thereof," as alleged in the petition. And said instruction is also erroneous in that it does not submit to the jury the question as to whether "during the transit of said apples from Exeter, Missouri, to Yoakum, Texas, defendant, at the request of the plaintiff, diverted said shipment of applies from Yoakum to San Antonio," as alleged in the petition. And, for a like reason, instruction No. 2, given on the behalf of plaintiff, is erroneous because it does not submit to the jury the question as to whether *"during the transit* of said apples from Washburn, Missouri, to Waco, Texas, and on the 27th day of October, 1902, plaintiff ordered and directed defendant to divert said shipment from Waco to San Angelo," as alleged in the petition. (3) And the court erred in refusing to give instruction No. 3, asked by defendant, for the converse of the above reasons, i. e., because it correctly submits the disputed facts in issue under the first count in the petition, and these facts were not correctly submitted to the jury in any instruction given. Macke v. Davis, 61 Mo. App. 524; Iron Mtn. Bank of St. Louis v. Murdock, 62 Mo. 70; Melvin v. Railroad, 89 Mo. 106; Price v. Railroad, 72 Mo. 414; Stanard Milling Co. v. White Line Transit Co., 122 Mo. 277, 26 S. W. 704; Hite v. Railway, 130 Mo. 136, 31 S. W. 262, 32 S. W. 33; Mason v. Railroad, 75 Mo. App. 10; Haynes v. Trenton, 108 Mo. 132, 18 S. W. 1003. (4) In cases like the one at bar, where the plaintiff alleges specific acts of negligence as the cause of his damage, he does not make out a prima facie case merely by showing the delivery to the carrier in good order, and non-delivery or delivery in bad order by the carrier. He must go further, and the burden is upon him at all times to show that the loss of the goods was due to the negligence alleged.

*R. H. Davis* for respondent.

(1) The liability of a common carrier is an extraordinary one, that of an insurer against loss or injury from whatever cause, except acts of God and the public enemy; and this liability does not depend upon the question of negligence or no negligence; for the carrier may be liable for the loss of goods or injury to them, although there has been on the carrier's part, no negligence. 4 Elliott on Railroads, sec. 1454, 2 Am. and Eng. Ency. of Law (1 Ed.), p. 778, 4 Lawson's Rights, Rem. and Prac., sec. 1809. And when the injury is one to dead freight, the mere proof of a receipt of the goods in good condition and a delivery in a damaged condition fixes prima facie the carrier's liability. 4 Elliott on Railroads, sec. 1516; Cash v. Railroad, 81 Mo. App. 113, 114; Hance v. Express Co., 48 Mo. App. 183; Buddy v. Railroad, 20 Mo. App. 206; Read v. Railroad, 60 Mo. 206; Davis v. Railroad, 89 Mo. 340. (2) Defendant does not plead any provision of the bill of lading issued to plaintiff, exonerating it from damages for injury to the apples in course of transit. If defendant had a contract with plaintiff exonerating it from damages occurring during transit, it would have to plead such exemption, and show by evidence that the loss came within such exemption, before the burden of proof would shift to plaintiff to prove that the damages occurred by reason of the negligence of defendant. Witting v. Railroad, 101 Mo. 631; 14 S. W. 743; The Otis Co. v. Railroad, 112 Mo. 622, 20 S. W. 676; George v. Railroad, 57 Mo. App. 363. (3) There is no evidence of any such contract of exoneration. The letters "O. R." standing alone in the bill of lading might be construed into an exemption; but there is no evidence to explain, nor does the bill of lading explain, the letters "S. L. & C. O. R." noted in the bill of lading. Ward v. Railroad, 158 Mo. 226, 58 S. W. 28; Railroad v. Hubbell, 3 Pac. 266. (4) It is also urged that the instruction given on behalf of

plaintiff as to the question of damages on the apples shipped from Washburn to Waco is a "roving commission," and was error. While the instruction is general, it is proper enough in what it does state, and it devolved upon defendant to present a proper instruction, if it wanted the elements of damages particularized. Browning v. Railroad, 124 Mo. 71, 27 S. W. 644; Haymaker v. Adams & Son, 61 Mo. App. 585; Barth v. Railroad, 142 Mo. 535, 44 S. W. 778; Geisman v. Missouri-Edison Elec. Co., 173 Mo. 679, 73 S. W. 654.

GOODE, J.—Plaintiff in three separate paragraphs in his petition declared on as many distinct causes of action. He is a dealer in apples at Washburn, Missouri, buying and shipping them to Texas and other points, and has been engaged in that business for twenty years. He is accustomed to make shipments to Texas over defendant's railroad, usually loading at Washburn and Exeter.

Plaintiff's first cause of action is founded on damage done to 170 barrels of apples shipped over defendant's line from Exeter, Missouri, on October 28, 1902. In the bill of lading these apples were consigned to plaintiff at Yoakum, Texas, with a direction to notify the Southern Commission Company. After the apples had been shipped, plaintiff directed that the shipment be diverted from Yoakum, the original destination, to San Antonio. This change of destination was due to a dispute which arose between plaintiff and the Southern Commission Company to whom the apples had been sold. The fruit arrived at San Antonio on November 11th and plaintiff was there in person at the time. On examination it turned out that the apples had been damaged by "heating and scalding," and it is for this damage plaintiff seeks to recover in the first paragraph of his petition. The fruit had been shipped in a refrigerator car and the alleged cause of the injury is that the ventilators of the car were closed during transit, pre-

venting the entrance of fresh air and overheating the interior. The cause of action is thus stated:

"Plaintiff further states that during the transit of said apples from Exeter, Missouri, to Yoakum, Texas, defendant, at the request of plaintiff, diverted said shipment of apples from Yoakum to San Antonio, Texas. Plaintiff further states that said shipment of apples was loaded into and shipped from Exeter, Missouri, in a refrigerator car, and that during transit the vents of said car were carelessly and negligently closed and permitted to remain closed; that by reason of the vents of said car being closed and remaining closed during transit, said apples were heated and scalded and damaged by reason thereof to plaintiff's damage in the sum of two hundred and seventy-two dollars and twenty cents for which plaintiff demanded payment by defendant on the 14th day of May 1903. Wherefore plaintiff prays judgment for said sum of $272.20 together with interest thereon at the legal rate from said 15th day of May, 1903."

The second cause of action relates to 167 barrels of apples shipped over the defendant's railroad from Washburn, Missouri, consigned to plaintiff at Waco, Texas, with a direction to notify C. H. Cox & Co. While these apples were in transit to Waco, their original destination, and the next day after they had been shipped from Washburn, plaintiff directed that the shipment be diverted from Waco to San Angelo, in the same State, and the agent at Washburn agreed to make the diversion. After the apples reached Waco they were left on a sidetrack for a few days instead of being taken at once to San Angelo, and as the weather was warm, they became overheated and were damaged; whereas plaintiff testified that if they had been carried promptly to the new destination, this would not have occurred. The case stated against defendant is as follows:

"Plaintiff further states that the defendant on the 26th day of October, 1902, contracted and agreed with

plaintiff, for a valuable consideration, to transport and carry for plaintiff from Washburn, Missouri, to Waco, Texas, . . . barrels of apples, which said apples plaintiff, on the 26th day of October, 1902, delivered to defendant in good condition on board of its cars at Exeter, Missouri.

"Plaintiff further states that during the transit of said shipment of apples from Washburn, Missouri, to Waco, Texas, and on the 27th day of October, 1902, plaintiff ordered and directed defendant, as he had a right to do, and which order it was defendant's duty to faithfully obey and observe, to divert said shipment from Waco, Texas, to San Angelo, Texas. Plaintiff further states that defendant carelessly and negligently failed to divert said shipment of apples from Waco to San Angelo, Texas, as ordered and directed, but carelessly and negligently permitted said shipment of apples to stand until the 11th day of November, 1902, in the railroad yards at Waco, Texas, in the refrigerator car into which said apples had been loaded at Washburn, Missouri. Plaintiff further states that if said shipment of apples had been promptly diverted, as ordered and directed by plaintiff, said shipment would have reached San Angelo in due course of shipment on or about the . . . day of October, 1902. Plaintiff further states that by reason of the negligence and carelessness of defendant in failing to divert said shipment as ordered and directed, and in carelessly and negligently permitting said apples to remain in the refrigerator car into which they had been loaded while standing in the railroad yards at Waco, said apples became heated and scalded; by reason thereof rotted in said car to plaintiff's damage in the sum of two hundred and eighty-six dollars and forty-five cents, for which plaintiff demanded payment of defendant on the 14th day of May, 1903. Wherefore plaintiff prays judgment for $286.45, together with interest thereon at the legal rate from said 14th day of May, 1903."

Plaintiff testified that it was the custom of defendant's agents at Washburn and Exeter to change the destination of cargoes of apples shipped by him, and that they had done this many times in the course of his dealings with defendant company; that there is a common rate to different points of shipment in Texas; that is to say, the same rate is charged from Washburn or Exeter to Yoakum, San Antonio and various other Texas points; that hence no increased expense was entailed by diverting a car from its original destination, and plaintiff was entitled to the diversion, on the agreement made with the agent at either Exeter or Washburn, in consideration of the rate originally agreed to be paid.

The third cause of action relates to damage done to several hundred barrels of apples which plaintiff had deposited on defendant's right of way at Washburn, with the purpose of loading them on cars and shipping them over the railroad. These apples, with defendant's consent, were put on a portion of the right of way known as the "commercial track" or "home track" near defendant's depot at Washburn. While they were there and some of them being loaded on a car, defendant's servants unloaded a carload of coal near them, and the dust from the coal sifted through the cracks of the barrels and injured the apples. Plaintiff testified that he notified the foreman of the men at work unloading the coal, to stop until the apples were loaded, telling him the coal dust would do injury; but no attention was paid to his request. For the defendant the evidence goes to show that it was necessary to unload the coal there in order to operate defendant's water tank from which its engines took water. The cause of action stated regarding this matter is that while plaintiff's apples were on the right of way waiting to be loaded, defendant, by its agents and servants, carelessly unloaded a carload of coal and large quantities of coal dust sifted through the cracks of the barrels, causing the apples to be blackened and injured; whereby they were damaged

in the sum of $130, for which plaintiff prayed judgment.

1. We do not agree with defendant's counsel that plaintiff's evidence shows he contracted with the agent of the San Antonio & Arkansas Pass Railroad Company, instead of defendant's agent, to have the car hauled from Yoakum to San Antonio. The argument in this connection is that, as far as appears, the apples were in good condition when they got to Yoakum and whatever damage they sustained may have occurred between that point and San Antonio, the final destination; and, hence, if they were in charge of the San Antonio & Arkansas Pass Railroad Company from Yoakum to San Antonio, and defendant company had fully performed its contract for carriage, by hauling them safely to Yoakum and there turning them over, on plaintiff's order, to another company, defendant was not responsible for any subsequent damage. Suffice to say that though plaintiff admitted he had conferred at Waco with an agent of the San Antonio & Arkansas Pass Railroad Company about having the apples taken to San Antonio, he swore further that he made the arrangement with defendant's agent at Exeter and took the matter up with the agent of the other railroad company to have him ascertain if the car had been diverted to his road and if it had been, to expedite its transit from Yoakum to San Antonio pursuant to the contract between plaintiff and defendant. If plaintiff's version of the matter was true defendant company remained under contract with plaintiff for the proper care of the apples until they reached their final destination, though, in completing the haul, they were handled by another company. Plaintiff's testimony goes to show that the custom between him and defendant was to divert shipments from their original destination, whenever circumstances arose after a car had left the starting point, which made a diversion desirable; also that defendant continued the

carriage to the new destination. Plaintiff therefore contends that as such contracts had been made by defendant's agent theretofore, and had been recognized as valid and executed by defendant, plaintiff had a right to rely on its performance of such a contract if one was made in the present case; and we think there was evidence to support a finding that it was made, and is governed by Missouri law, because entered into at Exeter in this State.

2. In instructing on the first cause of action the court told the jury, in substance, that if defendant, at plaintiff's request, diverted the car of apples from Yoakum to San Antonio, and the apples left Exeter in good condition, but when they arrived at San Antonio were heated, scalded and injured, the issues should be found for plaintiff, unless defendant had proved by the evidence that the apples were not injured by want of "care, skill and diligence on the part of defendant, its agents and servants, or any railroad to which defendant delivered said car of apples." At the instance of defendant the court instructed that unless the jury believed the ventilators of the car were carelessly and negligently closed, or permitted to remains closed, during the transit of the car from Exeter to Yoakum, the verdict must be for defendant on the first count of the petition. That instruction and the one given at the instance of plaintiff, conflict. The instruction for plaintiff made defendant responsible if the apples were damaged while in transit between Exeter and San Antonio; whereas the one for defendant made it responsible only in case the damage occurred between Exeter and Yoakum, the original destination. The first instruction was correct in adopting the theory that defendant was responsible for damage caused by the negligent act averred in the petition, if done anywhere on the trip to San Antonio, provided it was found that plaintiff contracted with defendant's agent to continue the carriage to San Antonio, and the contract was according to the

course of business between plaintiff and defendant. Such agreement was simply an extension of the original contract, and defendant stood responsible for negligent damage to the fruit by its own employees or the employees of any connecting carrier it made use of to complete its contract. [R. S. 1899, sec. 5222.] But if the contract for carriage from Yoakum to San Antonio was made with the San Antonio & Arkansas Pass Railroad Company, as might be inferred from the evidence, then defendant was only liable if the apples were injured by the negligence alleged while in its charge. As to the immediate point, plaintiff's instruction was correct. Defendant's was incorrect, in that it did not make defendant's non-liability between Yoakum and San Antonio depend on a finding that it had not agreed to carry the apples between those points.

3.   The first, and second instructions for plaintiff omitted to require the jury to find, as one condition of a verdict for him, that the alleged damage counted on in the first and second paragraphs of the petition, was caused by the acts of negligence stated in the respective paragraphs; in the first, closing the ventilators of the car and thereby overheating the apples in it; in the second; detaining the car on a track at Waco with the like result. If plaintiff wishes to avail himself of negligent damage to the Waco shipment, not only while it was on the track at Waco, but while in transit also, he should amend his petition.

4.   Error was committed in imposing the burden of proof on defendant in regard to the negligence alleged, and holding it responsible unless it established that the damage was not due to its fault or the fault of some connecting carrier. This proposition is contested by plaintiff's counsel on the theory that in an action against a carrier for damage to freight, it is sufficient to allege and prove the freight was delivered to him in good condition, and when redelivered to the owner or consignee at destination, was damaged; whereupon the

burden shifts to the carrier to show, when there is no valid contract limiting its common-law liability, that the damage was due to the act of God or the public enemy (Davis v. Railroad, 89 Mo. 340) ; or, if there was a limiting contract, that the damage was due to a cause for which, according to the terms of the contract, the carrier was not liable (Witting v. Railroad, 101 Mo. 631, 636, 14 S. W. 743). In the present instance the shipment was under a special contract by which, in consideration of a reduced rate of freight, defendant's liability for damage to the property was limited to damage resulting from negligence. The decisions in this State maintain the doctrine that, where a bill of lading contains a valid exception to a carrier's common-law liability, and an action is brought for damage to freight while in transit, and the petition charges delivery of the freight to the carrier in sound condition and redelivery in a damaged condition at destination, it devolves on the carrier, in defense, to show that the damage was due to a cause within the exception. Thereupon the plaintiff may, if he can, show that though the damage was due to an excepted cause, the carrier's negligence contributed to it. For instance, if there is a valid exception against liability for damage to freight by fire while in transit, it would devolve on the carrier to show, in defense of an action for loss of the freight, that the loss was due to fire; and then the plaintiff might show the carrier was still liable because the fire was caused by its negligence. [Witting v. Railroad, 101 Mo. 631; 28 Mo. App. 103]. We need not determine at present, whether that rule relating to liability for losses of freight from specific causes specially exempted in the bill of lading, would obtain when, instead of some special exceptions, a general exception in favor of the carrier for any loss not occasioned by its negligence, is invoked. In our judgment the decision of the present case turns on the rule of law imposing on the party who charges negligence the burden of proving his averment, and not on the rule reg-

ulating the burden of proof in actions against carriers on their common-law obligation. It is plain that neither the first nor second paragraph of plaintiff's petition, can be interpreted reasonably, as stating a case resting merely on the delivery of the fruit in sound condition to defendant and its return to plaintiff in a damaged condition. The very gist of both paragraphs is, that the fruit was damaged by certain specified negligent acts of defendant's servants. Hence, it is impossible to accord to plaintiff the benefit of the rule invoked in his behalf, and hold that he made a prima facie case by proving no more than that the fruit was sound when defendant received it and damaged when it reached destination. Plaintiff selected the ground on which he would rest his case and must be bound by the rules of law applicable to the case stated; which is unquestionably one for negligence. No doubt he chose to rely on negligence from a doubt whether, under the contract, defendant's common-law liability remained unchanged and governed the shipment, not only to Yoakum, but from there to San Antonio. It was incumbent on him to prove that the loss complained of was due to defendant's negligence, or that of some connecting carrier for whose negligence defendant was responsible. This proposition lies far beyond dispute and has been declared to be the law in identical cases. [Stanard Milling Co. v. White Lime Co., 122 Mo. 275, 26 S. W. 704; Witting v. Railroad, 101 Mo. 631; Farr v. Lead Co., 100 Mo. App. 574, 75 S. W. 183; Hadley v. Orchard, 77 Mo. App. 141; Galm v. Railroad, 87 S. W. 1015.] In some States the carrier must show affirmatively that the loss was not due to its neglect. We are cited to Doan v. Railroad, 38 Mo. App. 408, as supporting the contention that plaintiff's petition should be regarded as counting on defendant's common-law liability. In that case there was no contract, as there is in this one, limiting the railroad company's liability to damages resulting from its negligence; and, besides, the petition did not, as plaintiff's does, aver specific care-

less acts. Such acts are the gravamen of plaintiff's complaint.

What has been said above in relation to the burden of proof on the first cause of action, is applicable to the second. That, too, is stated in language which shows the case is one for negligence, and the burden was on plaintiff to establish negligence, as the cause of the damage.

5. Though we think the court erred in imposing the burden of proof on defendant, we do not concede the position that plaintiff failed to make a prima facie case. It is true that he proved nothing more as to the first cause of action than that the apples were sound when loaded at Exeter and unsound when unloaded at San Antonio, and that the ventilators were open when the car left Exeter and closed when it reached San Antonio. But as apples are dead freight, and cannot, like cattle or other animals, injure themselves, we think those facts constituted a prima facie case. Plaintiff was not bound to prove positively that the ventilators were closed by defendant's employees and not by some outside meddler. [Cash v. Railroad, 81 Mo. App. 109; Hance v. Express Co., 48 Mo. App. 179.] If the contract for carriage from Yoakum to San Antonio was with the San Antonio & Arkansas Pass Railroad Company and not with defendant, what we have just said would not apply. In that event defendant completed its contract and its responsibility ended at Yoakum; and as there was no proof that the fruit was already damaged, the presumption, in the absence of evidence on the issue, would be that defendant delivered it in good condition to the last carrier and the damage occurred on its line. [Crouch v. Railroad, 42 Mo. App. 248; Flynn v. Railroad, 43 Mo. App. 424, 439.] If defendant's contract was not extended beyond the original destination, plaintiff, in order to make a prima facie case, must introduce evidence that the fruit was injured when it arrived there. The facts in proof made a case on the second count, too.

Hurst v. Railroad.

6. In connection with the second shipment, it is insisted by defendant that plaintiff was bound to prove he exerted himself to dispose of the apples at Waco, and thereby diminish the loss which might result from their being detained, instead of being sent forward promptly to San Angelo. In many instances where one party has broken a contract, it is incumbent on the other party to do what lies in his power to diminish the loss likely to flow from the breach. But that rule has no application to the facts of the present case. Plaintiff had the right to rely on the agreement he had made with defendant's agent that the apples should be carried from Waco to San Angelo, and to expect prompt performance. It would be unjust to hold that it was his duty, if he saw the car standing on the track at Waco, to take it from defendant's custody while the carriage was still unfinished, and dispose of the apples in order to avert loss. He was not bound to go to that trouble to protect defendant against loss from its own breach of contract.

7. Testimony was given to support plaintiff's third cause of action, and we see no reason to condemn any of the rulings relating to it. There can be no doubt that the coal dust damaged the fruit. Plaintiff piled his apples on the right of way by direction of defendant's agent and according to the custom of business at the station. He swore he notified the foreman of the men who were unloading the coal, to forbear until the apples were put in cars, as the coal dust would injure them; but they ignored this request. It is a reasonable conclusion that they could have suspended work awhile without detriment to defendant's interests, and if this is true, they did wrong.

The judgment is reversed and the cause remanded with directions to let the verdict on the third count of the petition stand; to retry the issues arising on the other two counts and at the conclusion of the trial enter judgment on all the counts in accordance with the finding of the jury. All concur.