BROMLEY, Appellant, v. HUDSON LUMBER COMPANY, Respondent.

St. Louis Court of Appeals, October 22, 1907.

1. MASTER AND SERVANT: Negligence: Pleading: Particular Acts of Negligence. In an action by a servant for damages caused by the negligence of his master, where the petition alleges particular acts of negligence or particular defects in appliances, in order to recover he must prove the particular negligence or defect alleged.

2. ———: ———: Incompetent Foreman: Evidence. In an action by an employee for personal injuries caused by the defendant's negligence, where the petition alleged that the foreman of the defendant was notoriously incompetent, that his incompetency was known to the defendant and that through the ignorance and incompetency of the foreman, he ordered the plaintiff to perform an act in an unsafe and dangerous way, and in complying with the order the plaintiff was injured, it was error to exclude evidence to show the foreman was incompetent and that his incompetency was known to the defendant.

3. ———: ———: ———: Prima-Facie Case. If the plaintiff in such case could show that the foreman was incompetent and that his incompetency was known to the plaintiff and that the manner in which he ordered the plaintiff to do the work was dangerous on account of the plaintiff's inexperience, he would make out a case for the jury.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

REVERSED AND REMANDED.

*A. B. Lovan* for appellant.

(1) It is no defense in this case for respondent to say that the danger was patent and open to observation. The evidence shows that appellant, on account of his

youth and inexperience, did not understand and appreciate the nature and extent of the danger. 20 Am. and Eng. Ency. of Law (2 Ed.), 98; Goins v. Railroad, 37 Mo. App. 221; Dowling v. Allen, 74 Mo. 13; Dowling v. Allen, 102 Mo. 213. (2) The law makes respondent liable for an injury brought about by the incompetency of the foreman, when such incompetency was so notorious as to charge respondent with knowledge. It was therefore material to show the incompetency of the foreman. The court erred in refusing to permit appellant to show such incompetency by general reputation and by proving particular instances when the foreman unnecessarily put men in dangerous places and thereby caused them to be either injured or narrowly escape injury. O'Hare v. Railroad, 95 Mo. 662; Dysart v. Railroad, 145 Mo. 83; Grube v. Railroad, 98 Mo. 330.

*J. B. Todd* and *Woodruff & Mann* for respondent.

The rule has been many times stated and restated to be that if a plaintiff allege with particularity negligence or a defect in appliances or a place to work, he is required to make proof of that particular negligence or of that particular defect which he has alleged. Waldhier v. Railroad, 71 Mo. 516; McManamee v. Railroad, 135 Mo. 447; McCarty v. Hotel Co., 144 Mo. 397; Chitty v. Railroad, 148 Mo. 75; Bartley v. Railroad, 148 Mo. 124; Feary v. Railroad, 162 Mo. 96; Farr v. Express Co., 100 Mo. App. 574; Galm v. Railroad, 113 Mo. App. 591; Hurst v. Railroad, 117 Mo. App. 25.

STATEMENT.—The defendant is a corporation located at Springfield, Missouri, and engaged in sawing cedar logs into small blocks or sticks for making lead pencils. Defendant has three departments in its business; a sawing department, a bundle department and a yard department. A foreman is at the head of each of these departments. Plaintiff, a youth eighteen years of age, worked in the yard department. The yard employees re-

tied the bundles of sticks, put them into bags and loaded them into cars. They also unloaded cedar logs brought in on cars, moved the cars by use of clinch bars, and controlled their movements by use of the brakes or, when these were inaccessible, by use of blocks. After the cars were unloaded, they were run past the mill and sometimes coupled together. A switch track was constructed, leading from the mill to the main line of the Frisco railroad, the grade of which was descending to the east and toward the Frisco main line. Ordinarily, several carloads of sawlogs would be delivered on the switch at one time and would be pushed west of the point on the switch where they were to be unloaded. When the yard foreman was ready to unload, he would direct the employees under him to uncouple a car and take a clinch bar and start it down grade. When the car arrived at the proper place to be unloaded, it was stopped and after being unloaded was moved east by employees to make room for another. This process was kept up until all the cars were unloaded. On May 19, 1905, two empty coal cars, which had been unloaded, were on the switch. One of the cars had been moved fifty or sixty yards east from the place of unloading, and was stationary on the switch. Doss, the foreman, directed the other car to be started down the switch and ordered plaintiff to get on "and ride the brake," meaning to use the brake to control the speed. Doss went ahead and got on the stationary car. The car was started and attained a pretty good headway, and when near the stationary car, Doss ordered plaintiff to pull the pin from the drawhead (for the purpose of coupling it to the stationary one). At the time the order was given, plaintiff was standing at the brake outside the end gate of the body of the car, on a platform made by the extension of the floor. This platform was twelve or fourteen inches wide. The pin was attached to a short chain and was six or eight inches

below the platform.  In obedience to the order, plaintiff reached down to get hold of the chain to which the pin was attached, and pulled at it, but was unable to raise the pin.  He kept jerking at the pin and in doing so, his left foot slipped in between the edge of the platform and drawhead of the car on which he was riding as the cars came together, resulting in his great toe and the one next to it being mashed off, and the instep of his foot badly bruised.  The action is to recover for these injuries.

At the close of plaintiff's evidence, the trial court directed a verdict for defendant.

BLAND, P. J. (after stating the facts).—1.  The main question in the case is to determine whether or not plaintiff made out a prima-facie case of negligence against defendant as alleged in his petition.  The evidence shows that the cars were equipped with rods at their sides, by which one on the ground could raise the brake pin to let the couplings come together, and that, ordinarily, Doss, when he wished to couple cars on the switch raised the pins by means of the rods before the car or cars were started down the grade; it shows that plaintiff had never coupled cars, and had never been shown or instructed how to couple them; that he knew there were rods on the sides of the cars to raise the pins, but the one on his car could not be reached from where he was when he was ordered to raise it; it also shows that Doss ordered him to pull it, not to raise it with the rod.  In respect to the movement of the car and the circumstances of his injury, plaintiff, on his direct examination, testified as follows:

"Q.  What was Doss saying all the time?  A.  He was telling me to jerk the coupling pin up all the time so it would couple.

"Q.  Was the car moving or standing still at that time?  A.  It was moving.

"Q.  Fast or slow?  A.  Pretty fast.

"Q. How far were you from the car that Doss was on when he was having you hurry up? A. Well, I don't remember just how far we were.

"Q. Well, just a short distance? A. Just a tolerably short distance.

"Q. State whether the car increased in speed as it got near this car Doss was on? A. Yes, sir; it got faster all the time until it struck these other cars.

"Q. Tell the jury how you happened to get your foot caught there, if you know? A. Well, I was pulling on this coupling pin and the car was just ready to bump and I gave a jerk on it and my foot slipped off just as they bumped and caught it there."

On cross-examination, plaintiff testified as follows:

"Q. Do you know whether you were holding on or not? A. No, I don't remember whether I was holding to anything or not.

"Q. You knew if you slipped off there and went down between those cars you were apt to get killed? A. I never thought about slipping off.

"Q. There was no reason why you should slip? A. Nothing only pulling that coupling pin. I never thought about slipping.

"Q. There was no reason why you should slip off that you can think of? A. Only pulling this coupling pin.

"Q. There was nothing to make your feet slip? A. Well, a fellow jerking in a place like that you know his foot is liable to slip.

"Q. You knew that before as well as you know it now? A. Well, I knew a fellow could slip but I never thought of slipping on the car.

"Q. There is nothing to make you think he would slip, standing up there and reaching down? A. Nothing only jerking on the coupling pin.

"Q. What did he say to you when you got up there? A. After I got on the car he told me to take

hold of this coupling pin and raise the coupling pin so the cars would couple.

"Q. Now there was a chain on that that came up to the end of this beam that runs along? A. Yes, sir; a short chain.

"Q. That brought it up level with your feet, didn't it? A. Well, not hardly.

"Q. Well, it didn't lack much of it? A. Not very much.

"Q. You didn't get hold of the pin; you got hold of the chain? A. I got hold of the chain.

"Q. Because the chain came up higher than the pin? A. The chain was laying on the coupling pin.

"Q. When you got hold of it and straightened up it brought your hands up as high as your feet? A. About as high.

"Q. Then you were standing on something here and pulling up about as high as your feet? That is, the thing you think made your feet slip out from under you? A. Yes, sir; pulling on that coupling pin.

"Q. You had a foot and a half to stand on? A. If I hadn't been pulling on that coupling pin I wouldn't have slipped.

"Q. But you don't know what else made your foot slip from under you? A. That is all that I know of that made them slip.

"Q. You weren't out on the coupler? A. No, sir."

In his brief, counsel for plaintiff, as premises for his argument, assumes that the work plaintiff was ordered to do was, on account of the attending circumstances, hazardous. There is no direct evidence that it was hazardous, therefore, to find plaintiff made a prima-facie case within the scope of his petition, the court must hold, as a matter of law, that to pull a coupling pin from the drawhead of a car, situated as was plaintiff, was hazardous. It is not apparent that what plaintiff was ordered to do, in the circumstances shown

by the evidence, was hazardous, or that a reasonable man would have anticipated the accident which caused plaintiff's injury. The petition contains three counts. The only one relied on to support the judgment, after stating matter of inducement, alleges:

"That while plaintiff was so in the employ of defendant and under the direction of said foreman, Bur Doss, he was put to work by said foreman, along with other workmen, to couple together said railroad flat cars above described, on said side track; that by said foreman's direction, an attempt was made to couple said cars in the following manner, viz.: A number of said workmen started one of said empty cars down grade on said sidetrack in the direction of another empty car standing on said track some distance away; the said foreman was on said stationary car directing the work; this plaintiff by said foreman's direction, was on the moving car; while said car was moving and approaching closer and closer to said car on which was standing said foreman, the foreman, much excited and 'rattled,' abruptly and repeatedly demanded of plaintiff that he get on the front drawhead of the moving car and pull out the iron pin in said drawhead, so that when said cars came together they would be coupled and the pin would be dropped back into place; that plaintiff, urged and pressed by said foreman, got on said drawhead, and while attempting to pull said pin out, and while using all the care and knowledge of which plaintiff was capable, plaintiff's left foot slipped between said cars as they came together, and was caught and crushed by the drawheads of said cars he was attempting to couple, thereby causing great and permanent injury to plaintiff's left foot, crushing and breaking the bones of his instep, and causing him to lose and necessarily have amputated two toes — the big one and the one next to it — so he became sick, sore and disordered, and so has remained until now, and is and ever will be permanently disabled

in said foot, and prevented and hindered from making a support and from attending his ordinary business and occupation.

"That said injury to plaintiff was caused by the carelessness and negligence of defendant in this, that it negligently and carelessly kept in its employ a foreman, the said Bur Doss, while he was habitually and notoriously incompetent, as above set forth, and while the defendant knew he was so incompetent, and was so incompetent to the knowledge of defendant at the time of said injury to plaintiff, which occurred on the twenty-ninth day of May, 1905; that the manner of coupling said cars was due to the incompetence of said foreman; that said pin which the foreman directed plaintiff to pull out, ought to have been pulled out and adjusted before said car was started down said grade; that said coupling ought to have been effected by some one standing on the ground, where the cars coming together could not have crushed him but on account of said foreman's incompetence, he did not know how the work ought to be done and so directed plaintiff and the other workmen to do it in a wrong and a dangerous way, as above set forth."

There is no evidence that plaintiff was ordered to stand on the drawhead, in fact, his own evidence disproves this allegation, and there is no substantial evidence that Doss was an incompetent foreman. There is some evidence that he was excitable. It has been stated and restated many times by the appellate courts of this state, that if a plaintiff alleges, with particularity, negligence, or a defect in appliances, or a place to work, to entitle him to recover, he is required to make proof of that particular negligence, or defect, which he has alleged. [Waldhier v. Railroad, 71 Mo. 1. c. 516; McManamee v. Railway, 135 Mo. 1. c. 447, 37 S. W. 119; Chitty v. Railway, 148 Mo. 1. c. 75, 49 S. W. 868; Bartley v. Railway, Ib. 124, 49 S. W. 840; Feary v. Railway,

162 Mo l. c. 86, 62 S. W. 452; McGrath v. Transit Co., 197 Mo. 97, 94 S. W. 872; Farr v. Adams Express Co., 100 Mo. App. 574, 75 S. W. 183; Galm v. Railroad, 113 Mo. App. 591, 87 S. W. 1015; Hamilton v. Railway, 114 Mo. App. l. c. 509, 89 S. W. 893; Hurst v. Railroad, 117 Mo. App. 25, 94 S. W. 794.] This rule is but an application, in actions founded on specified negligence, of the well-established doctrine, that a plaintiff cannot count upon one cause of action and recover upon another. The specific negligence alleged in the petition, that plaintiff was ordered to stand on the drawhead of the car, which was manifestly an unsafe place to stand to do the work plaintiff was ordered to do, in the circumstances related in the evidence, was not proven, and therefore other allegations of negligence, if found in the petition, must be looked to in determining whether or not plaintiff made out a prima-facie case. In the second paragraph of the count quoted above, it is alleged, in substance, that Doss, the foreman, was notoriously incompetent and that his incompetence was well known to defendant, and the manner (described) of coupling the cars was due to his incompetence; that the coupling pin should have been drawn and adjusted by some one standing on the ground before the car was started down the track, but on account of the foreman's ignorance of this safe and usual way of drawing and adjusting the pin, he ordered it to be done in a wrong and dangerous way. Under these allegations of the petition, plaintiff offered to prove Doss was notoriously incompetent. The trial court erroneously excluded this evidence. On evidence that Doss was incompetent and that his incompetence was well known to defendant, and on further proof, if plaintiff is able to produce it, that it was dangerous for one of his age and inexperience to draw the coupling pin in the manner and under the circumstances shown by his evidence, we think the case should go to the jury. Wherefore the judgment is reversed and the cause re-

manded with leave to plaintiff to amend his petition if so advised. All concur.